*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: MICHAEL J. OYLER,

　　　　　　　　　　　　　*Debtor.*

---

MICHAEL J. OYLER,

　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

　　　　　　　*Defendant-Appellant.*

No. 03-4505

---

On Appeal from the United States Bankruptcy Appellate Panel for the Sixth Circuit.
No. 02-06090—Russ Kendig, Bankruptcy Judge.

Argued: December 3, 2004

Decided and Filed: February 3, 2005

Before: DAUGHTREY, COOK, and FARRIS, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Daniel S. Fisher, St. Paul, Minnesota, for Appellant. Donald M. Miller, Sr., Canton, Ohio, for Appellee. **ON BRIEF:** Frederick S. Coombs, III, HARRINGTON, HOPPE & MITCHELL, Youngstown, Ohio, for Appellant. Donald M. Miller, Sr., Canton, Ohio, for Appellee.

---

## OPINION

---

　　COOK, Circuit Judge. Education Credit Management Corporation ("ECMC") appeals the Bankruptcy Court's discharge of Michael Oyler's student loans from ECMC and asks us to consider whether that debt poses an "undue hardship" to Oyler. Unlike the Bankruptcy Court and Bankruptcy Appellate Panel (B.A.P.), we hold that it does not and thus reverse.

---

[*]The Honorable Jerome Farris, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

I

Oyler is the pastor of a Messianic Jewish church that he founded in June 1998. He is forty-eight years old and married with three children. Before founding his church, Oyler earned bachelor's and master's degrees, worked as a salesman and audio engineer, and once owned his own business.

At the time of trial, Oyler's family's income had been less than $10,000 for each of the past two years—well below poverty level for a family of five. The church congregation provided the family with an apartment and a salary around $1,200 per month, varying depending upon congregation members' contributions. The family had no health insurance, and Oyler suffered four retinal detachments as a result of a medical condition, scleral buckle. The only debts scheduled in his Chapter 13 plan were the $40,000 worth of student loans from ECMC, and, at the time of trial, Oyler was current in his monthly payments of $50 into the plan.

In June 2002, Oyler began an adversary proceeding in Bankruptcy Court to discharge his student loans under 11 U.S.C. § 523(a)(8). At the end of trial, the court concluded that repayment of the student loans would constitute an undue hardship, and entered a judgment discharging the debt. ECMC timely appealed, first to the B.A.P., which affirmed the judgment, and then to this court.

II

In an appeal from the B.A.P., we focus on the Bankruptcy Court's decision, and review its factual findings for clear error and its legal conclusions de novo. *Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429, 433 (6th Cir. 2004). Whether student loans pose an undue hardship is a legal question we review de novo. *Cheesman v. Tennessee Student Assistance Corp.* (*In re Cheesman*), 25 F.3d 356, 359 (6th Cir. 1994).

III

The Bankruptcy Code allows discharge of student loans only when repayment "will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Most circuit courts follow the standard for "undue hardship" adopted by the Second Circuit which requires a three-part analysis: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987).

We have recognized and frequently applied the three prongs of *Brunner* in our undue hardship cases (and also our health-education-assistance-loan unconscionability cases), but have hesitated to explicitly adopt *Brunner* as the exclusive analytical framework. *See, e.g., In re Cheesman*, 25 F.3d at 359-60 (undue hardship); *Rice v. United States* (*In re Rice*), 78 F.3d 1144, 1149-50 (6th Cir. 1996) (unconscionability). Instead, we have considered the *Brunner* test, along with other factors such as: (1) the debt amount; (2) the interest rate; (3) the debtor's claimed expenses and current standard of living to evaluate whether the debtor has attempted to minimize expenses; (4) the debtor's income, earning ability, health, education, dependents, age, wealth, and professional degrees; and (5) whether the debtor has attempted to maximize income by seeking or obtaining employment commensurate with her education and abilities. *Miller v. Pa. Higher Educ. Assistance Agency* (*In re Miller*), 377 F.3d 616, 623 (6th Cir. 2003).

We believe our current "hybrid-*Brunner*" model for assessing undue hardship foments confusion because our so-called "other factors" actually fit easily into the well-accepted *Brunner* analytical template. For instance, we have labeled a debtor's expenses and standard of living and the amount of the debt as independent factors, yet *Brunner*-test courts regularly scrutinize these same factors under the first prong of the test. *See, e.g., United States Dep't of Educ. v. Gerhardt* (*In re Gerhardt*), 348 F.3d 89, 92 (5th Cir. 2003). We have cabined as a separate factor a debtor's attempt to maximize income, but most courts conceptualize that inquiry as the controlling aspect of *Brunner's* second prong. *See Storey v. Nat'l Enter. Sys.* (*In re Storey*), 312 B.R. 867, 872 (Bankr. N.D. Ohio 2004). And nearly all of the bankruptcy courts in this circuit apply the test and employ these other factors within the *Brunner* framework. *See Jackson v. Educ. Credit Mgmt. Corp.*, No. 3:03CV7692, 2004 WL 952882, at *2 (N.D. Ohio Apr 30, 2004) ("Bankruptcy courts within this district have consistently applied the *Brunner* test."). Given then, that the *Brunner* construct subsumes the criteria we have treated as distinct and independent, and that the *Brunner* formulation easily accommodates factors we look to in evaluating undue hardship, we opt to join other circuits[1] in adopting the simpler rubric of the *Brunner* test.

IV

Applying the *Brunner* test, we conclude that Oyler fails its second prong, because he has shown no "additional circumstances . . . indicating that this state of affairs is likely to persist for a significant portion of the repayment period." Such circumstances must be indicative of a "certainty of hopelessness, not merely a present inability to fulfill financial commitment." *In re Roberson*, 999 F.2d at 1136. They may include illness, disability, a lack of useable job skills, or the existence of a large number of dependents. *See Kraft v. New York State Higher Educ. Serv. Corp.* (*In re Kraft*), 161 B.R. 82, 84 (Bankr. W.D.N.Y. 1993). And, most importantly, they must be beyond the debtor's control, not borne of free choice. *See Fischer v. State Univ. of New York* (*In re Fischer*), 23 B.R. 432, 434 (Bankr. W.D. Ky. 1982). Choosing a low-paying job cannot merit undue hardship relief. *See Healy v. Massachusetts Higher Educ.* (*In re Healey*), 161 B.R. 389, 395 (E.D. Mich. 1993) ("A resolute determination to work in one's field of dreams, no matter how little it pays, cannot be the fundamental standard from which 'undue hardship' . . . is measured.").

Oyler's choice to work as a pastor of a small start-up church cannot excuse his failure to supplement his income so that he can meet knowingly and voluntarily incurred financial obligations. By education and experience he qualifies for higher-paying work and is obliged to seek work that would allow debt repayment before he can claim undue hardship. *See In re Storey*, 312 B.R. at 872 (debtor must do everything in his power to improve financial situation); *In re Kraft*, 161 B.R. at 86-87 (debtor needed to look for all job opportunities before claiming undue hardship). The Bankruptcy Court erred by not considering that Oyler's decision not to maximize his earnings, though commendable, was voluntarily made after he also voluntarily incurred the debt that he now wishes to discharge.

---

[1]For those circuits formally adopting the *Brunner* test, see *Brunner*, 831 F.2d 395; *Pa. Higher Educ. Assistance Agency v. Faish* (*In re Faish*), 72 F.3d 298, 306 (3d Cir. 1995); *United States Dep't of Educ. v. Gerhardt* (*In re Gerhardt*), 348 F.3d 89, 91 (5th Cir. 2003); *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993); *United Student Aid Funds, Inc. v. Pena* (*In re Pena*), 155 F.3d 1108, 1112 (9th Cir. 1998); *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1309 (10th Cir. 2004); *Hemar Ins. Corp. of Am. v. Cox* (*In re Cox*), 338 F.3d 1238, 1241 (11th Cir. 2003). And the Fourth Circuit, while not yet expressly adopting *Brunner*, applies the test. *See, e.g., Ekanasi v. The Educ. Res. Inst.* (*In re Ekanasi*), 325 F.3d 541 (4th Cir. 2003).

V

Because Oyler's circumstances fail to meet the *Brunner* standard to qualify for undue-hardship discharge of his student loans, we reverse the decision of the Bankruptcy Appellate Panel.[2]

---

[2]Though Oyler may not qualify for undue-hardship discharge due to his decision to pursue a low-paying career, and his failure to supplement his income, other avenues of relief remain open to him.  As counsel for ECMC suggested at oral argument, Oyler could enter the William D. Ford consolidation program's "income contingent repayment plan" to alleviate some of the burden of repayment.  *See* 20 U.S.C. § 1087e(d)(1)(D).