*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: ROSE A. TIRCH,

*Debtor.*

---

ROSE A. TIRCH,

*Plaintiff-Appellee,*

*v.*

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE
AGENCY,

*Defendant-Appellant.*

No. 04-3125

---

On Appeal from the Bankruptcy Appellate
Panel of the Sixth Circuit.
No. 00-54083—Barbara J. Sellers, Bankruptcy Judge;
William T. Bodoh, Bankruptcy Appellate Panel Judge.

Argued and Submitted: February 1, 2005

Decided and Filed: June 3, 2005

Before: SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Donald J. Rafferty, COHEN, TODD, KITE & STANFORD, Cincinnati, Ohio, for
Appellant. **ON BRIEF:** Donald J. Rafferty, COHEN, TODD, KITE & STANFORD, Cincinnati,
Ohio, for Appellant. D. William Davis, DAVIS LAW OFFICE, Bridgeport, Ohio, for Appellee.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant Pennsylvania Higher
Education Assistance Agency ("PHEAA") appeals the Bankruptcy Appellate Panel's ("BAP") order
affirming the bankruptcy court's order granting partial discharge of Plaintiff-Appellee Rose Tirch's
student loan debt. Because the record does not support the bankruptcy court's findings that Tirch's
ailments preclude her return to work and are likely to persist for a significant portion of the

1

repayment period, or that she made a good faith effort to pay back her student loans, we will REVERSE.

Tirch, a single female in her mid-40s, holds a B.A. in Counseling, which she received in the mid-1980's and a Master's Degree in Counseling, which she received in 1998. Tirch financed her education through a total of 17 loans provided by PHEAA and owed an aggregate balance of $84,604.65 as of June 19, 2001, with interest accruing at a rate of $558.08 per month. As of the filing of this appeal, Tirch, who first defaulted on her loans on October 24, 2000, had made $3,072.75 in payments on the loans and had arranged for her alma mater, Franciscan University of Steubenville, to make a charitable payment of $1,850.77.

After receiving her Master's Degree, Tirch worked in various counseling positions and earned about $27,000 in 1999, $28,500 in 2000, and $27,500 in 2001. Claiming various long-term medical and emotional problems, including attention deficit disorder, chronic anxiety and depression, as well as colorectal surgery in December 2001, from which she has had a slow recovery, Tirch stopped working at the end of 2001. Apparently as a result of anaesthetics administered during the surgery, Tirch lost her sense of taste, which has affected her appetite and which she contends has made a return to work impossible. For a period of 24 months, Tirch received $1,400 per month in disability benefits based on her allegedly debilitating mental condition.

Sometime in 2000—Tirch does not provide us with the date—Tirch filed for protection under Chapter 7 of the Bankruptcy Code. In August of 2000, some sixteen months before she stopped working, Tirch filed an adversary proceeding against PHEAA in her Chapter 7 case, seeking a discharge of her student loan debt for "undue hardship" pursuant to 11 U.S.C. § 523(a)(8). The bankruptcy court held a trial on August 16, 2002, at which Tirch was the only witness. During the trial, Tirch described her medical and emotional problems and produced unauthenticated records from her treating doctors, which the bankruptcy court admitted solely as evidence that she had sought medical help, but not as evidence of the underlying medical diagnoses. She also testified that she did not apply to participate in the William D. Ford Federal Direct Consolidation Program. This program includes an Income Contingent Repayment ("ICR") plan whereby the lenders and loan guarantors are repaid by the Program, and the borrower becomes obligated to repay the Program a reduced amount for a period of up to 25 years, after which time any unpaid portion is discharged. Tirch admitted that she was aware of the program's existence but elected not to avail herself of its benefits.

Applying the three-part test announced by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987), the bankruptcy court granted Tirch a partial discharge of her student loan debt, holding that requiring Tirch to pay her student loans in an amount in excess of $200.00 per month once she returns to work and earns a salary of at least $20,000 per year would impose an undue hardship. The bankruptcy court's order allows Tirch to discontinue payments at age 65 in any eventuality. The BAP affirmed the bankruptcy court's order. PHEAA timely appealed.

We focus our review of cases appealed from the BAP on the bankruptcy court's decision, examining findings of fact for clear error, and conclusions of law de novo. *In re Palmer*, 219 F.3d 580, 583 (6th Cir. 2000). Whether the repayment of student loans would impose an undue hardship on the debtor is a question of law that we review de novo. *In re Cheesman*, 25 F.3d 356, 359 (6th Cir. 1994).

The Bankruptcy Code provides for the complete discharge of educational loans whose repayment would impose an "undue hardship" on the debtor. 11 U.S.C. § 523(a)(8). Despite the fact that 11 U.S.C. § 523(a)(8) makes no mention of partial discharges, we have held that the bankruptcy court may grant a partial discharge of such a debt pursuant to the equitable powers

enumerated in 11 U.S.C. § 105(a). *In re Miller*, 377 F.3d 616, 620-21 (6th Cir. 2004) (citing *Hornsby v. Tenn. Student Assistance Corp.*, 144 F.3d 433, 439-40 (6th Cir. 1998)); *see also DeMatteis v. Case Western Reserve University*, 97 Fed.Appx. 6, 9 (6th Cir. March 8, 2004) (unpublished). *Miller* held that "the requirement of undue hardship must always apply to the discharge of student loans in bankruptcy—regardless of whether a court is discharging a debtor's student loans in full or only partially." *Id.* at 622.

Because "undue hardship" is not defined by the Bankruptcy Code, this circuit has traditionally looked to the *Brunner* test for guidance. *See, e.g., In re Cheesman*, 25 F.3d at 359 (applying the *Brunner* test to plaintiff's request for a total discharge of student loans); *Miller*, 377 F.3d at 623 (analyzing the bankruptcy court's grant of a partial discharge of student loans under *Brunner*). Very recently, however, we explicitly adopted the *Brunner* test. *In re Oyler*, 397 F.3d 382, 385 (6th Cir. 2005). Accordingly, in this circuit, a debtor seeking a partial discharge of student loans due to "undue hardship" must make a three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
> (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. Because PHEAA concedes that under her current circumstances, Tirch cannot maintain a minimal standard of living if forced to repay the loans, this case turns on the second and third prongs of the *Brunner* test. After examining the record of the proceedings in the bankruptcy court, we conclude that Tirch failed to carry her burden on either of these prongs.

To demonstrate that the debtor's current "state of affairs is likely to persist for a significant portion of the repayment period of the student loans," as required by *Brunner*'s second prong, the debtor must precisely identify her problems and explain how her condition would impair her ability to work in the future. *In re Brightful*, 267 F.3d 324, 330 (3d Cir. 2001); *In re Paolini*, No. 95-3516, 1997 WL 476515 at * 5 (6th Cir. Aug. 19, 1997). The dischargeability of loans should be based upon "a certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Oyler*, 397 F.3d at 386 (quoting *In re Roberson*, 999 F.3d 1132, 1136 (7th Cir. 1993)). Tirch has not made this showing.

Tirch testified that she continues to experience problems arising from her rectal surgery, including irregularity and loss of taste, but she did not provide evidence that these physical problems would preclude her from working. Instead, she explained that "[a]t this point I can't help somebody else when I can't help myself and no one can help me. So I don't feel I can be in the counseling field or social work field at this time and I'm not even functioning in my own home." When pressed, she explained further,

> If my taste returns, which is my biggest difficulty that I'm having, which people may see as simple, but it's not . . . . So I don't believe I can return to work any time soon. If I don't have the - - the return of my taste, I don't know how I'm going to cope long term to be able to get back to work in any capacity, I don't know.

Neither has Tirch provided evidence sufficient to demonstrate that her psychological conditions preclude her return to work. Her assertion that "I went through post-traumatic stress when I went to work at the State of West Virginia as a social worker" is certainly not sufficient. Tirch should have sought employment in another field when the stress of clinical social work became debilitating. *See Paolini*, 1997 WL 476515 at *6 ("while [the debtor's] struggle with

[obsessive compulsive disorder] makes her unsuited for work in the stressful environment of a large law firm, there are a plethora of legal jobs [the debtor] has not yet explored"); *see also In re Hafner*, 303 B.R. 351, 356 (Bankr. S.D. Ohio 2003). The remainder of Tirch's testimony relating to her claim that she is unable to work is simply a recitation of incidents of stress occurring over a period of several years, unsupported by competent medical or psychological evidence. We have no occasion to delve into the BAP's holding that the bankruptcy court's assessment of the debtor's testimony regarding her mental and emotional health is sufficiently reliable to support the bankruptcy court's findings in that regard, without the necessity of expert corroboration, because the bankruptcy court made no such assessment. Indeed, the bankruptcy court provided no factual basis whatsoever for its bald conclusion that Tirch had met all three prongs of the *Brunner* test.

Nor did Tirch provide evidence that these problems would "persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. When asked if she would be able to return to work, Tirch responded,

> Not at this time. And I don't know when this would be. It could be a year, it could be two years. I don't know how I'm going to cope if I have complete [loss of taste] forever. I really at this time can't and I know it's - it could be six months to a year if I don't - - if [my sense of taste] returns, I could.

Nothing in Tirch's statements and nothing in the record as a whole provides any "certainty of hopelessness," *Oyler*, 397 F.3d at 386, or any basis for concluding that Tirch's current condition will persist for any appreciable period. Indeed, we are hard-pressed to discern, either from any of these statements or from the entire record, how her condition prevents her from working now, let alone in the future.

The facts of Tirch's case are similar to those in *In re Burton*, 117 B.R. 167 (Bankr. W.D. Penn. 1990), in which a 33-year-old debtor with a four-year college degree testified that he suffered from Epstein-Barr Syndrome (the virus that causes, among other things, infectious mononucleosis), a severe bowel disorder, depression, and a lack of concentration, and presented unauthenticated letters from a doctor, which purported to corroborate his testimony. The court held that the debtor did not demonstrate undue hardship because he "failed to show what the long-term deleterious effects of the disease are; that he can be expected to suffer those effects during the next ten (10) years or so; or, that this condition will prevent him from being gainfully employed during that time." *Id.* at 171. Like the debtor in *Burton*, Tirch has failed to prove that her ailments preclude her return to work and will persist for a significant portion of the repayment period.

Tirch has also failed to show that she made a good faith effort to repay the loans, as required by the third prong of the *Brunner* test. We begin our good faith analysis with Tirch's decision not to avail herself of the William D. Ford ICR. The bankruptcy court in *In re Korhonen*, 296 B.R. 492, 496 (Bankr. D. Minn. 2003), explained the mechanics of the ICR:

> The Income Contingent Repayment Program permits a student loan debtor to pay twenty percent of the difference between his adjusted gross income and the poverty level for his family size, or the amount the debtor would pay if the debt were repaid in twelve years, whichever is less. Under the program, the borrower's monthly repayment amount is adjusted each year to reflect any changes in these factors. The borrower's repayments may also be adjusted during the year based on special circumstances. *See* 34 C.F.R. § 685.209(c)(3). At the end of the twenty five year payment period, any remaining loan balance would be cancelled by the Secretary of Education. However, the amount discharged would be considered taxable income.

While not a *per se* indication of a lack of good faith, *see Educational Credit Management Corp. v. Polleys,* 356 F.3d 1302, 1311 (10th Cir. 2004), Tirch's decision not to take advantage of the ICR is probative of her intent to repay her loans.  *See Brunner*, 831 F.2d at 397.  In cases involving a partial discharge of student loans, "it is a difficult, although not necessarily an insurmountable burden for a debtor who is offered, but then declines the government's income contingent repayment program, to come to this Court and seek an equitable adjustment of their student loan debt."  *In re Swinney*, 266 B.R. 800, 806-07 (Bankr. N.D. Ohio 2001) (citing *In re Ritchie*, 254 B.R. 913, 923 (Bankr. D. Idaho 2000) and *In re Douglass,* 237 B.R. 652, 657 (Bankr. N.D. Ohio 1999)); *see also In re Storey*, 312 B.R. 867, 875 (Bankr. N.D. Ohio 2004); *In re Alderete*, 289 B.R. 410, 420 (Bankr. D.N.M. 2002).

The BAP determined that Tirch's failure to avail herself of the ICR was not probative of her good faith because her payments under the plan would be $597.34 per month, and the bankruptcy court had found that it would work an undue hardship on Tirch to require her to pay more than $200.00 per month once she attained an annual income level of $20,000.  According to the BAP, the ICR therefore provided no effective relief.  The BAP, however, misapplied the formula that calculates a debtor's payments under the ICR.  As we will explain, Tirch would have had to pay only $183.66 per month had she taken advantage of the ICR.

Under the ICR, the annual amount payable by the student is the lesser of,

(i) The amount the borrower would repay annually over 12 years using standard amortization multiplied by an income percentage factor that corresponds to the borrower's adjusted gross income (AGI) as shown in the income percentage factor table in a notice published annually by the Secretary in the FEDERAL REGISTER; or
(ii) 20 percent of discretionary income.

34 C.F.R. § 685.209(a)(2).  Under subsection (a)(2)(i), Tirch would have to pay $597.34 per month (while there is a discrepancy in the BAP's opinion over whether the monthly total under subsection (a)(2)(i) is $597.37 or $597.34, this discrepancy makes no difference in the analysis).  In Tirch's case, however, her payments under subsection (a)(2)(ii), twenty percent of her discretionary income, would be far less than $597.34 per month.  According to 34 C.F.R. § 685.209(a)(3), a borrower's discretionary income is her AGI minus the Health and Human Services Poverty Guideline Amount. The BAP calculated Tirch's discretionary income as $11,020 by subtracting $8,980 (the HHS poverty guideline for a single person living in the continental 48 states) from $20,000 (Tirch's estimated AGI).  Next, the BAP divided $11,020 by 12 months and concluded that the ICR monthly payment under subsection (a)(2)(ii) would be $918.33 per month.  However, the BAP did not consider that 34 C.F.R. § 685.209(a)(2)(ii) requires the debtor to pay only 20% of her discretionary income.  Twenty percent of Tirch's discretionary income of $11,020.00 equals $2,204.00.  Tirch's resulting monthly payment under the ICR is $183.66, which is even less than the $200 monthly payment that the bankruptcy court ordered and the BAP upheld.

Because Tirch declined to take advantage of an ICR that would have been advantageous, she failed to sustain the heavy burden of proving that she made a good faith effort to repay her loans. Since the mid-1980's (when she received a B.A. financed by PHEAA loans), Tirch had paid only $4,093.52 (including Franciscan University's contribution) on a series of loans which reached an aggregate balance of $84,604.65 by June of 2001.  Despite receiving her Master's Degree in 1998 (also financed by PHEAA loans) and making roughly $27,000 in 1999, $28,500 in 2000 and $27,500 in 2001, she defaulted on her loans by October of 2001.  When viewed in the context of her demonstrable earned-income potential, the $4,093.52 that Tirch paid on her student loans in the 20 years since she received her B.A. is meager.  Tirch has failed to satisfy the third prong of the *Brunner* test.

Because Tirch has failed to demonstrate that her circumstances meet the *Brunner* standard to qualify for an "undue hardship" partial discharge of her student loans, we **REVERSE** the decision of the BAP affirming the judgment of the bankruptcy court.