ELECTRONIC CITATION:  2006 FED App. 0003P (6th Cir.)
File Name:  06b0003p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   THOMAS FRANCIS BARRETT, JR., | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| EDUCATIONAL CREDIT MANAGEMENT | ) |
| CORPORATION, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | )   No. 05-8011 |
| | ) |
| THOMAS FRANCIS BARRETT, JR., | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division at Youngstown.
No. 01-45444; Adv. No. 02-4164.

Argued:  February 1, 2006

Decided and Filed:  March 2, 2006

Before: AUG, LATTA, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Frederick S. Coombs III, HARRINGTON, HOPPE & MITCHELL, Youngstown, Ohio, for Appellant. Robert A. Ciotola, Canfield, Ohio, for Appellee. **ON BRIEF:** Frederick S. Coombs III, HARRINGTON, HOPPE & MITCHELL, Youngstown, Ohio, for Appellant. Robert A. Ciotola, Canfield, Ohio, for Appellee.

---

**OPINION**

---

JENNIE D. LATTA, Bankruptcy Appellate Panel Judge. Educational Credit Management Corporation ("ECMC") appeals an order of the bankruptcy court discharging the debtor's student loans as the result of undue hardship pursuant to 11 U.S.C. § 523(a)(8). For the reasons set forth below, we AFFIRM the decision of the bankruptcy court.

## I. ISSUES ON APPEAL

Whether the second prong of the *Brunner* test requires corroborating evidence in the form of expert medical proof to establish that the circumstances that cause a debtor's inability to repay his loans will likely continue for a substantial portion of the repayment period. Whether the third prong of the *Brunner* test requires participation in the Income Contingent Repayment Plan to establish that a debtor has made good faith efforts to repay the loans.

## II. JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Southern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel for the Sixth Circuit ("BAP"). A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted); *In re Copper*, 314 B.R. 628, 629-30 (B.A.P. 6th Cir. 2004), *aff'd,* 426 F.3d 810 (6th Cir. 2005). A bankruptcy court order discharging student loans on the basis of undue hardship is a final order. *Dolph v. Pa. Higher Educ. Assistance Agency v. Dolph (In re Dolph)*, 215 B.R. 832, 834 (B.A.P. 6th Cir. 1998). The BAP has jurisdiction to decide this appeal.

Whether repayment of student loans will pose an undue hardship is a question of law that is reviewed *de novo*. *Cheesman v. Tenn. Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359 (6th Cir. 1994). *De novo* review means that the Panel determines questions of law independently of the bankruptcy court. *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*,

2

219 B.R. 468, 469 (B.A.P. 6th Cir. 1998). The bankruptcy court's factual findings, however, are reviewed for clear error. The factual findings of the bankruptcy court will not be set aside unless the Panel has "the definite and firm conviction that a mistake has been committed." *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433, 436 (6th Cir. 1988) (quoting *Cheesman*, 25 F.3d at 359). Due regard is to be given to the opportunity for the bankruptcy court to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.

### III. FACTS

Thomas Barrett ("Debtor") obtained student loans in the amount of $94,751 while acquiring a masters degree in Health Administration and in Business Administration. Although the Debtor had prior medical problems, he was able to graduate from the programs in 1999. After graduation, he became ill, with unexplained fevers, night sweats, and weight loss. The illness continued and was eventually diagnosed as Hodgkin's lymphoma during the summer of 2000. According to a letter from his physician, the Debtor was treated with chemotherapy called ABVD and is currently in remission. The Debtor testified that the treatment caused adverse effects on his lungs and circulatory system.

In October of 2002, the Debtor began experiencing pain in his shoulders and was diagnosed with avascular necrosis, a condition that causes the patient's bones to die from lack of blood supply. The Debtor was prescribed 20 mg of Oxycontin, to be taken twice a day, for pain. In April of 2004, he underwent surgery to replace the joint in his right shoulder. He also testified that he suffered from pain in his shoulders, knees, and hips. In August of 2004, he again had surgery on his right shoulder to repair the shoulder replacement cap. At the time of the trial, the Debtor's medication had been increased to 40 mg of Oxycontin three times per day as well as two other medications. The Debtor testified that the pain in his left shoulder, hips, and knees has increased, and he expects that further surgery will be required. The Debtor testified for some five hours before the bankruptcy judge who therefore was uniquely able to observe his demeanor and judge his credibility.

The Debtor testified that the pain he experiences has prevented him from working full time, and, because of anticipated surgeries, he does not expect to be able to work in the foreseeable future. He had worked at some part-time positions, and at the time of trial, was self-employed doing computer-related work using his left hand (while his right shoulder heals) to move a computer

3

mouse. He testified that he had attempted to find other work, but that potential employers lost interest when they learned of his health problems.

The Debtor's student loans have been deferred on the basis of his health problems and minimal income. As a result, no payment has come due on his student loans and the loans are not in default. The Debtor testified that he had not participated in the Income Contingent Repayment Program ("ICRP") because of his fear of adverse tax consequences. The Debtor testified that he had used an Interactive Repayment Calculator to determine possible outcomes under the ICRP. He testified that, based upon a loan amount of $100,000, an interest rate of 4%, and annual income of $15,000, at the end of 25 years he would have made only minimal payments on the loan. At that time, he would owe $268,761, which would be written off and treated as taxable income to him.

The Debtor's schedules and statement of financial affairs were admitted into evidence. The Debtor listed no real property and minimal personal property consisting of household goods, wearing apparel, a computer, cash and other financial accounts, all of which had an aggregate value of $1,120. The Debtor listed no secured debts and no priority debts. He listed unsecured, nonpriority debts of $302,342. The bankruptcy court found that approximately 60% ($183,781) of these debts were described as medical bills. The Debtor scheduled two student loans in the total amount of $94,751, approximately one-half of his scheduled medical debt.

The bankruptcy court found that the Debtor's medical condition had deteriorated between the filing of his bankruptcy petition and the trial on his adversary complaint. The Debtor had incurred $20,000 in additional medical debt that he was unable to pay. He testified that he goes to the Cleveland Clinic for doctor visits five times per month, incurring a $20 co-pay for each visit. He also incurs travel and parking expenses for each visit. The Debtor testified that his cost for prescription medications is $600 per month, and that his cost for health insurance is $1,000. The Debtor receives some financial assistance from his parents who are in their mid-60s. He testified that he could not be assured of their financial help into the future. The court found that the Debtor had not been able to make payments on his debts for medical bills, and could not make payments on his student loans.

ECMC presented no rebuttal proof. It merely relied upon its assertion that the Debtor failed to carry his burden of proof with respect to the second prong of the *Brunner* test because he failed

4

to corroborate his testimony with expert medical evidence, and failed to carry his burden of proof with respect to the third prong of the *Brunner* test because he failed to enroll in the ICRP.

## ANALYSIS

Prior to amendment effective October 17, 2005, with respect to the discharge of student loans, the Bankruptcy Code provided:

> A discharge under section 727, 1141, 1228(a), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8) (pre-BAPCPA)[1]. The Sixth Circuit has explicitly adopted the so-called *Brunner* test for determining whether the repayment of a student loan would impose an undue hardship on a debtor. *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005); *see Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987). As summarized by the court, the *Brunner* test requires a three-part showing by the debtor:

> (1) that the debtor cannot maintain, based on current income and expenses a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Fields v. Sallie Mae Serv. Corp. (In re Fields),* 326 B.R. 676, 681 (B.A.P. 6th Cir. 2005) (quoting *Miller v. Pa. Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 623 (6th Cir. 2004)). To obtain a discharge of student loans, a debtor must show by a preponderance of the evidence that he has satisfied all three prongs of the *Brunner* test. *In re Miller*, 377 F.3d at 623.

_____

[1]Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") which became effective on October 17, 2005.

The bankruptcy court found that the Debtor satisfied all three prongs of the *Brunner* test. ECMC appeals only with respect to prongs two and three. That is, ECMC concedes that the Debtor cannot maintain a minimal standard of living for himself (the Debtor has no dependents) if forced to repay his student loans.

With respect to the second prong, ECMC maintains that the Debtor's testimony without more is inadequate to establish the existence of additional circumstances indicating that the current state of affairs is likely to continue. ECMC focuses solely on the lack of expert medical proof, but such additional circumstances,

> may include illness, disability, a lack of useable job skills or the existence of a large number of dependents. And, most importantly, they must be beyond the debtor's control, not borne of free choice.

*Oyler,* 397 F.2d at 386 (citation omitted). "Include" is a term generally understood to be not limiting, meaning that what follows the term "include" in the *Oyler* court's discussion of the second prong of the *Brunner* test are examples of relevant additional circumstances. *See* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting"). It is to be expected that there will be other examples of circumstances indicating a likelihood that a current state of affairs will persist for a substantial portion of the repayment period for a student loan. There is no per se requirement of expert medical proof implied in the second prong of the *Brunner* test. The bankruptcy court found that the Debtor was not a medical expert but stated that the Debtor could "testify about how his diagnosis affects his own health and his firsthand knowledge about that." J.A., p.43.

In this case, the Debtor testified that he has been diagnosed with avascular necrosis, "a condition caused when you have blood supply cut off from various outside medications such as chemotherapy and it causes the blood supply to the bones to shut off and the bones then die." J. A., p. 43. The Debtor's definition is consistent with that issued by the National Institutes of Health:

> Avascular necrosis is a disease resulting from the temporary or permanent loss of the blood supply to the bones. Without blood, the bone tissue dies and causes the bone to collapse. If the process involves the bones near a joint, it often leads to collapse of the joint surface. This disease also is known as osteonecrosis, aseptic necrosis, and ischemic bone necrosis. . . .

6

The amount of disability that results from avascular necrosis depends on what part of the bone is affected, how large an area is involved, and how effectively the bone rebuilds itself. The process of bone rebuilding takes place after an injury as well as during normal growth. Normally, bone continuously breaks down and rebuilds – old bone is reabsorbed and replaced with new bone. The process keeps the skeleton strong and helps it to maintain a balance of minerals. In the course of avascular necrosis, however, the healing process is usually ineffective and the bone tissues break down faster than the body can repair them. If left untreated, the disease progresses, the bone collapses, and the joint surface breaks down, leading to pain and arthritis. . . .

Conservative treatments have been used experimentally alone or in combination. However, these treatments rarely provide lasting improvement. Therefore, most patients will eventually need surgery to repair the joint permanently.

Nat'l. Inst. of Arthritis and Musculoskeletal and Skin Diseases, *Questions and Answers About Avascular Necrosis*, (2001), http:// www.arthroscopy.com/avn.htm. *See* Barry Russell, *Bankruptcy Evidence Manual* § 201.3 (2006 ed.) ("Under [Federal Rule of Evidence] 201(f), judicial notice may be taken at any stage of the proceeding, including by an appellate court."*); Hertzel v. Educ. Credit Mgmt. (In re Hertzel),* 329 B. R. 221, 231-33 (B.A.P. 6th Cir. 2005).

The Debtor described the resulting pain he was experiencing, the inability of medication to control his pain, the expectation that he will need surgery to replace each of his major joints, the recovery period he experienced with respect to the first surgery to replace his right shoulder, and the need to have these surgeries in sequence to avoid the necessity for round-the-clock nursing care. The Debtor anticipated that he would be having surgery and recovering from surgery for the rest of his life. The Debtor further testified about his attempts to work and to find work. He testified that he has been unable to hold a full-time job since graduation from St. Louis University because of the severity of his pain. He also testified that employers lose interest in hiring him when they learn of his medical history. This state of affairs had continued from 1999, when the Debtor graduated from St. Louis University, until the time of trial, November 23, 2004, some five years later. The Debtor provided information about his income and expenses. The Debtor testified that he was able to work for a short period of time one to two days per week. He estimated that he averages income of about $2,000 per month from the jobs he is able to get. He itemized monthly expenses of $4,000 per

month which are not expected to decrease. The Debtor's testimony was corroborated by his income tax return for 2003 which showed annual income from wages of $2,563, business income of $2,421, and unemployment compensation of $8,034. All of this testimony came into the record without objection or rebuttal testimony. The trial judge had adequate opportunity to observe the witness and determine his physical condition and credibility. The trial judge found "that Plaintiff's testimony in this case is credible with respect to his current medical condition and there has been no inference that Plaintiff in this case has not been diagnosed with avascular necrosis nor that he is not in constant pain." J. A., p. 164. There is no suggestion of error with respect to the court's factual findings.

The second prong of the *Brunner* test requires proof of additional circumstances indicating that the current state of affairs is likely to persist for a significant portion of the repayment period of the student loans. A debtor "must precisely identify [his] problems and explain how [his] condition would impair [his] ability to work in the future." *Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677, 681 (6th Cir. 2005). The Debtor's proof indicates a state of affairs that has continued for five years and a current medical condition that entails severe pain and the expectation of extended surgeries. In addition, the Debtor offered proof of his present inability to find work and the reluctance of employers to consider him for even part-time work because of his medical history. Even if his medical condition improves, his medical history is fixed. His medical history, which includes Hodgkins lymphoma, avascular necrosis, chemotherapy, multiple surgeries, and severe pain, is itself an additional circumstance indicating that the Debtor's inability to pay his student loans is likely to persist. Further, during the pendency of his Chapter 7 case, the Debtor has incurred substantial additional medical debt, which he has been unable to pay. This additional debt is another circumstance making it likely that his current inability to pay his student loans is likely to persist. By focusing solely on the lack of expert medical testimony concerning the prognosis for the Debtor's current medical condition, ECMC overlooked other substantial evidence in the record indicating that the current state of affairs is likely to persist for a significant portion of the repayment period. This is what is required by the second prong of the *Brunner* test, not a medical prognosis (though expert medical proof of the expected course of a debtor's medical treatment and recovery would also be a relevant additional circumstance). We agree with the bankruptcy court that a requirement of corroborating evidence "when Plaintiff is unable to afford expert testimony or

documentation imposes an unnecessary and undue burden on Plaintiff in establishing his burden of proof," if corroborating evidence is understood to be limited to expert medical testimony. J. A., p. 162-63. *See Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful),* 267 F.3d 324, 330 (3rd Cir. 2001) (The bankruptcy court's findings regarding a debtor's physical condition do not require expert testimony).

The Debtor here has provided corroborating evidence in the form of documentation confirming his past illness, his testimony concerning past events, and in his physical condition and demeanor. The Debtor has testified as to how his physical condition affects his ability to be employed. *Mosley v. Gen. Rev. Corp. (In re Mosley)*, 330 B. R. 832, 846 (Bankr. N.D. Ga . 2005). None of the circumstances that will impede the Debtor's ability to repay his student loans in the future is within his control. In short, the record as a whole provides a "certainty of hopelessness" that this Debtor will be able to repay his student loan obligation in the future. *Tirch*, 409 F.3d at 682. The evidence provided by the Debtor was sufficient, in this case, to establish the second prong of the *Brunner* test.

The third prong of the *Brunner* test requires proof that the Debtor has made good faith efforts to repay his student loans. The Debtor has made no payments toward his student loans, but none have come due as the result of four deferments given on the basis of economic hardship. ECMC takes the position that the Debtor cannot prove that he has made good faith efforts to repay his student loans unless he agrees to participate in the ICRP. Adoption of ECMC's position would effectively eliminate the discharge of student loans for undue hardship from the Bankruptcy Code. The Panel does not believe that this is the result intended by Congress. The Debtor explained that he had considered the ICRP, that he had used a calculator provided on the internet to determine the likely outcome if he participated in the program, that he feared he would owe substantially more at the end of the repayment period than he owes today, and that he feared an adverse tax consequence in that event. ECMC focuses solely on the likelihood that the Debtor would actually suffer an adverse tax consequence in the event his circumstances do not dramatically improve, and fails to take account of the additional worry and anxiety that the Debtor is likely to suffer if he is compelled to watch his debt steadily increase knowing that he does not have the ability to repay it for reasons beyond his control. Where there is no reasonable likelihood that the Debtor will ever be able to

9

repay his student loans, the ICRP fails to provide a reasonable alternative to a discharge for undue hardship.

The Debtor in this case has reasonable expenses, yet continues to accrue debt for medical care. He has made efforts to increase his income within his ability. He has cooperated in providing information to his student loan creditors on an annual basis to obtain deferments. He has never had the ability to repay his student loans as evidenced by the deferments granted to him as the result of economic hardship. His condition is likely to persist for a significant portion of the repayment period for his student loans through no fault of his own. Utilization of the ICRP would likely result in a substantial increase in his student loan debts over the repayment period. The Debtor has amply demonstrated his good faith. The third prong of the *Brunner* test is satisfied.

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is **AFFIRMED.**