In re Charles Lee HART, Marilyn Kaye Hart, Debtors,

Marilyn K. Hart, Appellant,

v.

ECMC, Appellee.

No. 10–12350.
Bankruptcy No. 09–56601.
Adversary No. 09–05802.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 1, 2010.

Corey M. Carpenter, Pleasant Ridge, MI, for Plaintiff.

American Student Assistant Guarantor, pro se.

Troy A. Gunderman, Educational Credit Management, Oakdale, MN, Daniel N. Sharkey, Paula A. Hall, Birmingham, MI, for Defendant.

### ORDER DENYING APPEAL AND AFFIRMING BANKRUPTCY COURT JUDGMENT OF MAY 27, 2009

GEORGE CARAM STEEH, District Judge.

This is an appeal from a judgment of the Eastern District of Michigan Bankruptcy Court, dismissing debtor-appellant Marilyn Kaye Hart's adversary proceeding. Appellant had sought a declaratory judgment that a certain student loan debt was dischargeable pursuant to 11 U.S.C. § 1328(a). Following a non jury trial, Judge Shefferly held that repayment of the loan in question would not impose an undue hardship pursuant to the test utilized by the Sixth Circuit in *In re Oyler*, 397 F.3d 382 (6th Cir.2005), adopting the ruling in *In re Brunner*, 831 F.2d 395 (2nd Cir.1987). This appeal followed.

### STATEMENT OF FACTS

Appellant filed for relief under Chapter 13 of the United States Bankruptcy Code on May 27, 2009. The Chapter 13 Plan was confirmed on August 29, 2009. Appellant is 62 years old, is currently unem-

ployed, and receives only Social Security income. She was last employed on December 31, 2008, when she was laid off from her employment of nearly 20 years as a legal secretary. For the last twelve years of her employment, appellant worked part-time 20–30 hours per week. Appellant received unemployment compensation from the State of Michigan until she reached the age of 62, at which time she began receiving social security income.

Appellant made some effort to seek new employment, making informal inquiries of the lawyers who shared office space with her former employer. However, appellant testified that she did not intend to make a 100% effort to find employment in the future, citing the need to take care of her spouse.

Appellant's spouse is a 63 year old retiree of Ford Motor Company. He received a medical pension from Ford in 1992 due to chronic breathing and obesity problems, and is now considered permanently and totally disabled and is confined to the family residence.

In 1995, appellant incurred "Parent–Plus" loans on behalf of her daughter. The loans were consolidated in 2004, when appellant was 56 years old, and are held by appellee ECMC. The principal balance of the consolidated student loans as of April 27, 2010 was $40,866.85. Appellant has made at least $6,390.61 in payments toward the loan, as stipulated to at trial.

Appellant's household income currently includes social security income of $792 and $1,586, and $883 from a pension, for a total monthly income of $3,261. The appellant has received annual tax refunds ranging from $1,546 to $2,173, according to records that date back to 2005. She testified she used the tax refunds to catch up on her bills. Appellant's Amended Schedule J lists her monthly household expenses, totaling $2,771. Appellant and her spouse

pay their Chapter 13 trustee $490 per month, and turn over their tax refunds. Appellee receives a payment from the trustee as an unsecured creditor. The bankruptcy will be complete in 2012, at which time appellant will have $490 per month available, in addition to her tax refunds, to allocate to her student loans. Appellee suggests that appellant can consolidate her student loan obligations into an income contingent repayment program, estimating her monthly payment to be approximately $120.

## STANDARD OF REVIEW

When a Bankruptcy Court's decision is appealed to the District Court, the District Court is bound by the Bankruptcy Court's findings of fact unless they are clearly erroneous. Bankr.Rule 8013. This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo. Rembert v. AT & T Univ. Card Serv. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir.1998). A decision that repayment of student loans constitutes an undue hardship is a question of law subject to *de novo* review. *See In re Hertzel,* 329 B.R. 221, 225 (6th Cir. BAP 2005).

## ANALYSIS

In order to discharge student loan obligations, repayment must impose an "undue hardship" on the debtor and the debtor's dependents. The three-prong *Brunner* test was adopted by the Sixth Circuit in *Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382 (6th Cir.2005) (adopting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir.1987)). To show an undue hardship, a debtor must establish three elements by a preponderance of the evidence: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of liv-

ing for the debtor and the debtor's dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Id.* at 385.

## I. *First Brunner Prong*

■ The first prong of the *Brunner* test requires an analysis of whether the debtor is capable of paying the loans while maintaining a minimal standard of living. *Brunner*, 831 F.2d at 396. "Implicit within this inquiry is the requirement that the debtor demonstrate that he is actively minimizing his current household living expenses and maximizing personal and professional resources." *In re Healey*, 161 B.R. 389, 394 (Bankr.E.D.Mich.1993). The Bankruptcy Court concluded that appellant failed to meet her burden in both respects.

## A. *Minimizing Expenses*

■ The debtor's bare necessities essential to life are to be compared to her actual expenses to determine if she has minimized her expenses as required for the *Brunner* test. Here, appellant spends $115 on telephone services (including $65 on telephone and $50 on cell phone), $65 on cable/internet and $75 on recreation. The Bankruptcy Court found that "cell phones, cable, Internet, and recreational expenses are not part of a minimal standard of living[.]" (T. 188). The Sixth Circuit has rejected these same "non essential" expenses. *Miller v. Pa. Higher Educ. Assistance Agency*, 377 F.3d 616, 623–24 (6th Cir.2004). The Bankruptcy Court concluded, "I don't think that the expenses shown are consistent with a minimal standard of living ... the debtor has not done all that she could do by way of

reducing discretionary expenses to find additional funds with which to pay their student loan payments." (T. 188–89).

Appellant argues that her home phone and cell phone expenses are necessary due to her husband's health; when she is away from home, her spouse needs to have a method of getting in contact with her in the event of an emergency. Regarding cable, Internet and recreation, appellant's testimony is that these are necessary expenses due to her husband's medical condition which does not permit him to leave the house. Appellant argues her husband has no other form of recreation.

There is no legal support for appellant's argument that her homebound husband is entitled to the entertainment provided by cable and the Internet. The court is more sympathetic to the argument that the house and cell phones are necessary under the circumstances facing the debtor and her husband. However, this court finds that appellant has not minimized her expenses.

## B. *Maximizing Income*

The Bankruptcy Court found, "I don't think the debtor has shown by a preponderance of the evidence that she's maximized her income. I do think that there's more that could be done to continue to search for some other source of income, some other source of part-time employment, and that's not to say Ms. Hart hasn't undertaken some efforts, but I don't think she's undertaken enough efforts for this purpose here today." (T. 190).

During the 16 months between the end of her employment and trial, appellant testified, "I haven't made any attempt to approach other law firms." (T. 88). Appellant described the extent of her job search as posting an online resume, going on one interview, approaching the five other lawyers with whom her former employer

shared an office, and contacting one other attorney for whom she previously worked.

Appellant describes her earning capacity as limited due to the fact that her highest level of education was high school. This case is distinguishable from *In re Taylor*, 334 B.R. 576 (N.D.Ohio 2005), wherein the debtor, who was 56 years old and had a ninth grade education was found to have maximized her earnings by working for seven years as a real estate agent. The court found the debtor had a strong work ethic based on the activities she undertook to advertise properties and increase her clientele. *Id.* at 584. Mrs. Hart argues that she presented evidence of her work ethic at trial, but she was referring to how hard she worked to take care of her husband full-time while she was working part-time as a legal secretary.

Appellant's decision not to conduct an all-out job search really comes down to the fact that she feels she must take care of her homebound spouse. Appellant described her search for in-house nursing care, and the conclusion that she could not afford such care, even if she were working full-time. Appellant urges the court not to look at her efforts to maximize her income in a vacuum, but to weigh the factor with all the other evidence. She argues that the record establishes that responsibility for her spouse's care, and the cost of acquiring in-house nursing care, outweigh appellant's failure to secure full-time employment.

The record does not support appellant's argument that she cannot work outside the home due to her husband's condition. Nor is there evidence that her financial condition would be negatively impacted if her husband's health declined and he was required to move to a nursing home. These are all speculative arguments. This court finds appellant has not maximized her income.

### C. *Conclusion*

Appellant has not demonstrated that she has minimized her expenses to the level required by *Brunner*, particularly with regard to cable and Internet. She also has not shown that she is unable to obtain some part-time employment, despite her husband's health condition, whereby she could make $120 per month to cover repayment of the student loan. Appellant thus fails the first *Brunner* prong.

## II. *Second Brunner Prong*

■ To establish the second prong of the *Brunner* test, the debtor must show that her circumstances indicate a "certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Oyler*, 397 F.3d at 386 (debtor who was in his 40s, had higher education degree, and left a higher paying job as a salesman to earn $10,000 per year as a pastor, did not satisfy second *Brunner* prong). Appellant points to several circumstances she believes established that she met her burden, but the Bankruptcy Court concluded that they were insufficient.

■ Appellant first suggests that her age, and that of her spouse, "outweighs any perceived 'extra income' that the Appellant might have at the completion of her Chapter 13 Plan." Appellee cites to many cases wherein courts denied undue hardship based on age when evaluating debtors who took out loans later in life. Courts were not sympathetic to debtors who took out loans in their forties, fifties and even sixties, and then tried to say they were later too old to pay them back. See, *Jones v. Bank One Texas (In re Jones)*, 376 B.R. 130, 139 (W.D.Tex.2007); *Fabrizio v. United States Dep't of Educ. (In re Fabrizio)*, 369 B.R. 238, 249 (Bankr.W.D.Pa.2007). The loans in the cases cited by appellee were student loans taken out of debtors

for their own education, as opposed to loans taken out for someone else's benefit. The court does not see this as a relevant distinction. Appellant obviously wanted to help with her daughter's education and understood that she would be required to repay the loan. Student loan lenders in the Federal Family Education Loans Program ("FFELP") are specifically prohibited from discriminating in any way based upon age, 20 U.S.C. § 107(a)(2), so they should not be at increased risk of not being repaid when lending to older borrowers. Appellant should not be able to use her age as a reason for her inability to pay the loan back.

The Bankruptcy Court considered evidence of Mr. Hart's medical condition, which was described as totally disabled. The debtor testified her husband has been fully disabled for ten years, "functionable until about the last four." (T. 103). The debtor has been able to work part-time during her husband's disability, as supported by the evidence in this case. The Bankruptcy Court did not ignore evidence of Mr. Hart's medical condition, rather it considered such evidence and found that it was outweighed by other facts.

The debtor's educational background is no excuse for her inability to find work where she has 20 years of experience as a legal secretary.

Appellee points out that the debtor's approximate household income of $39,000 is "more than twice what the poverty guidelines that are presently in effect[.]" (T. 186). The federal poverty guidelines for a family of two is $14,570. Although the minimal standard of living test does not require a debtor to live at or below the poverty level, the analysis "begins, and ends," with the debtor's income when it is between two and three times the poverty level. *Elmore v. Mass. Higher Educ. Assistance Corp. (In re Elmore)*, 230 B.R. 22, 28 (Bankr.D.Conn.1999).

The debtor chose to bring this adversary proceeding seeking to discharge her student loan debt while she was in a Chapter 13 bankruptcy. The plan will expire in 2012, at which time "Mr. and Mrs. Hart are going to have another $490 of income that will no longer be required to pay to the Chapter 13 trustee." (T. 149). Appellee's counsel explained in closing argument that the $490 might not be available because there may be other expenses for the home. The Bankruptcy Court also considered that Mr. Hart's medical condition may result in increased expenses as time goes on. Still, these hypothetical expenses are nothing more than speculation at this point.

Also, the Bankruptcy Court found that debtor had built extra money into her budget for unexpected expenses, including increased medical bills. For example, debtor's budget provides for $200 per month for transportation, not including car payments, despite the fact that her husband does not leave the house and neither of them work. The debtor admitted that she has $75 budgeted per month for auto maintenance that covers gas and oil changes, so the $200 is "emergency money" for new tires, or in case of a breakdown. (T. 84).

While the debtor has the experience and ability to return to gainful employment, even if she continues with her choice to be unemployed her circumstances do not satisfy *Brunner's* second prong. As the Bankruptcy Court recognized, binding precedent requires "that the dischargeability of loans should be based on a certainty of hopelessness, not merely a present inability to fulfill a financial commitment." (T. 197). See *Oyler*, 397 F.3d at 386.

This court finds that appellant has not demonstrated a certainty of hopelessness. Appellant thus fails to meet the second *Brunner* prong.

### III. *Brunner Good Faith Prong*

To establish good faith, a debtor must prove that she adequately explored alternative repayment plans. *Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch),* 409 F.3d 677 (6th Cir.2005). The debtor also must prove that "the forces preventing repayment are truly beyond his or her reasonable control." *Brunner,* 46 B.R. at 756. Among the primary considerations for measuring good faith are the debtor's "efforts to obtain employment, maximize income, and minimize expenses." *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour),* 433 F.3d 393, 402 (4th Cir.2005).

The Sixth Circuit identified factors that a court may examine to determine good faith. See *In re Fields,* 286 Fed.Appx. 246 (6th Cir.2007) (citing *In re Flores,* 282 B.R. 847 (Bkrtcy.N.D.Ohio 2002)). The factors include: (1) whether the failure to repay the student loan was due to circumstances beyond the debtor's reasonable control; (2) whether the debtor has used all available resources to repay the loan; (3) whether the debtor is using her best efforts to maximize her earnings potential; (4) how long after the loan was incurred did the debtor seek to discharge the debts; (5) what the overall percentage of the student loan debt is compared to debtor's overall debt; and (6) whether or not the debtor has gained tangible benefits of the student loan.

Appellant contends her failure to repay the student loans was due to factors beyond her control, specifically losing her job and her husband's medical condition. She also points out she has used all available resources, including her tax refunds, to repay the loan obligations. The loans were incurred in 1995 and consolidated in 2004, and appellant did not seek bankruptcy relief for another five years, and then only after she lost her job. Appellant made every effort to keep the loans in good standing, until she believed she could no longer do so.

The Sixth Circuit found in *Tirch,* "[w]e begin our good faith analysis with Tirch's decision not to avail herself to the William D. Ford ICR [program]." *Tirch,* 409 F.3d at 682. The court found the debtor's "decision not to take advantage of the ICR is probative of her intent to repay her loans." *Id.* The court concluded, "[b]ecause Tirch declined to take advantage of an ICR that would have been advantageous, she failed to sustain the heavy burden of proving that she made a good faith effort to repay her loans." *Id.* at 683.

The Bankruptcy Court, analyzing *Tirch,* recognized that Mrs. Hart's failure to avail herself to the "income contingent repayment program doesn't automatically or per se mean that the debtor lacks good faith ... but the court said that in considering whether the debtor has made a good faith effort ... the Bankruptcy Court here, has to take into consideration whether the debtor availed herself of this or that the debtor took advantage of an ICR, which is the abbreviation for income-contingent repayment program." (T. 198–99).

In this case, the debtor testified she made one phone call to inquire into the ICR program many years ago. The Bankruptcy Court concluded "I don't think on balance, that I could find sufficient good faith efforts to repay were made since Mrs. Hart did not make a more diligent effort or more inquiry over this long period of time to see if she qualified." (T. 201). It does not matter that there is no evidence of appellee notifying appellant that she was eligible for the ICR program. During the pendency of the adversary proceedings and before trial, ECMC made appellant aware of the ICRP option.

The William D. Ford Program is codified at 34 C.F.R. 685.100 through 685.402. A debtor's eligibility for the Ford Pro-

gram, as well as the formula for determining payment amount, are contained in the federal regulations. The Bankruptcy Court found that "[a]t $120 per month for the ICRP payment ... the amended Schedules I and J that are filed, that would require giving up basically the cable, the Internet, and the recreation line items. There may be other line items that could be adjusted as well...." (T. 203). The Bankruptcy Court's factual findings are not clearly erroneous, and this court finds that appellant fails the good faith prong, in part, because of her failure to take advantage of the $120 per month ICRP program.

### CONCLUSION

For the reasons stated above, the court DENIES appellant's appeal and AFFIRMS the Bankruptcy Court's judgment of dismissal of appellant's adversary proceeding.