In re William Chapman
DEWEY, Debtor.

William Chapman Dewey, Plaintiff,

v.

Sallie Mae, Inc., Defendant.

William Chapman Dewey, Plaintiff,

v.

Educational Credit Management
Corporation, Defendant.

Bankruptcy No. 05–35173–JDL.
Adversary Nos. 05–00576, 05–00684.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Jan. 10, 2008.

Russell W. Savory, Memphis, TN, for Plaintiff.

Kristen Collier Wright, Bass, Berry & Sims, PLC, Memphis, TN, Charles C. Exum, Jackson, TN, for Defendant.

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

JENNIE D. LATTA, Bankruptcy Judge.

BEFORE THE COURT are the Defendants' motions for summary judgment. The Defendants ask for money judgments against the Plaintiff arising from a number of student loans and a declaration that these debts are not dischargeable.[1] The Plaintiff, a licensed psychiatrist who suffers from Bipolar disorder, admits that he is indebted to the Defendants, but asks for strict proof of the amounts of the debts. Further, the Plaintiff urges that as the result of his illness, repayment of his student loans would cause him undue hardship and, thus, that the loans should be discharged pursuant to 11 U.S.C. § 523(a)(8). For the reasons that follow, the court will grant the motions and enter judgment for the Defendants. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## STANDARD FOR GRANTING SUMMARY JUDGMENT

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056; Fed. R.Civ.P. 56. A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In the face of a motion for summary judgment, a party must make a showing sufficient to establish the existence of each element essential to that party's case on which that party will carry the burden of proof. In the event that a party fails to make this showing, there can be no genuine issue of material fact, since a failure of proof on an essential element of the nonmoving party's case renders all other facts immaterial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There must be evidence sufficient for a jury to find for the

---

1. Pursuant to an order entered January 5, 2006, these adversary proceedings have been consolidated for discovery and trial pursuant to Rule 7042 of the Federal Rules of Bankruptcy Procedure.

plaintiff. *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## BURDEN AND STANDARD OF PROOF

Whether a debtor's student loans are dischargeable under section 523(a)(8) is a question of law. *Oyler v. Educ. Mgmt. Co. (In re Oyler),* 397 F.3d 382, 384 (6th Cir.2004); *Cheesman v. Tenn. Student Assistance Corp.,* 25 F.3d 356, 359 (6th Cir. 1994). The Plaintiff, Dr. Dewey, bears the burden of proving by a preponderance of the evidence each of the elements needed to establish that repayment of the loans would cause him undue hardship. *Barrett v. Educ. Mgmt. Co. (In re Barrett),* 487 F.3d 353, 358–59 (6th Cir.2007). The Sixth Circuit has adopted the *Brunner* test for determining whether repayment of a student loan will cause an undue hardship. *Oyler,* 397 F.3d at 385. The elements of the *Brunner* test are these:

(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*Oyler,* 397 F.3d at 384 (quoting *Brunner v. N.Y. State Higher Educ. Serv. Corp.,* 831 F.2d 395 (2d Cir.1987)).

The motions of the Defendants were accompanied by statements of undisputed material facts, which in turn are supported by (1) the affidavits of their respective corporate representatives concerning the amounts of the loans and Dr. Dewey's attempts to repay them; (2) Dr. Dewey's answers to interrogatories; and (3) ex-cerpts from the depositions of Dr. Dewey and of Dr. Radwan S. Haykal, a treating psychiatrist. Dr. Dewey filed objections to the motions, which are supported by (1) the affidavit of his brother, H. Tucker Dewey; (2) copies of payment histories for the loans; and (3) copies of forbearance agreements entered into by him. In his responses to the motions for summary judgment, Dr. Dewey points to no disputed issues of fact. Instead, he disagrees with the inferences drawn by the Defendants. The Defendant, Sallie Mae, Inc. ("Sallie Mae"), was given leave to file a reply to Dr. Dewey's objection to its motion for summary judgment. Attached to the reply is a copy of Dr. Dewey's updated answers to interrogatories, indicating that he secured employment as a part-time psychiatrist and obtained health insurance alter the initial filing of his interrogatory responses. Dr. Dewey subsequently filed another update to his interrogatory responses indicating that he was asked to resign from this position.

Although nondischargeability cases are generally fact-intensive, this does not mean that in the face of a defendant's motion for summary judgment, the plaintiff may do nothing. A plaintiff must come forward with proof on each of the elements of his claim. Further, it is not up to the court to take the place of a medical expert. When seeking a declaration of nondischargeability on the basis of a medical disability, a plaintiff must establish that his condition prevents him from working and is not likely to improve during the repayment period for the loans. *See In re Tirch,* 409 F.3d 677, 682 (6th Cir.2005). This need not take the form of expert medical testimony, but there must be proof in the record tending to show that the plaintiffs medical condition is debilitating and is expected to continue to be debilitating for the life of the loans. *See Barrett,*

487 F.3d at 360. In these cases, the Defendants carry the burden of proof only as to their counter-claims, which seek to reduce each of the notes signed by Dr. Dewey to judgment. Dr. Dewey ultimately carries the burden of proving by a preponderance of the evidence that these debts should be excepted from discharge. In the context of these motions for summary judgment, Dr. Dewey must make a showing sufficient to establish each of the elements upon which he will ultimately carry the burden of proof at trial. The court draws all inferences in favor of Dr. Dewey, the nonmoving party.

## FACTS AND ANALYSIS

### 1. The Counter–Claims

As stated, the Defendants carry the burden of proof as to their counterclaims. Sallie Mae submitted the affidavit of Alice Sams in support of its counterclaim. The affidavit recites that Sams is employed as a litigation analyst for Sallie Mae and that she is personally familiar with the account of the Plaintiff, Dr. Dewey. The affidavit further recites that Sallie Mae is the agent of SLM Education Credit Management Corporation, which is the holder of three Medex Medloans made by Dr. Dewey. The affidavit recites that Dr. Dewey made three notes described as follows:

Note I, dated June 16, 1994, in the original principal amount of $6,958.99;

Note II, dated August 2, 1995, in the original principal amount of $3,493.00;

Note III, dated August 27, 1995, in the original principal amount of $7,000.00.

The affidavit states that although Dr. Dewey made sporadic payments on the loans, the outstanding amount of indebtedness has actually increased as the result of accruing interest, fees, and costs. The affidavit states that as of May 1, 2007, the total outstanding balance owed by Dr. Dewey for these three loans was $31,243.50, and that interest continues to accrue.

The Defendant Educational Credit Management Corporation ("ECMC") submitted the affidavit of Lisa A. Thigpen in support of its counterclaim. The affidavit recites that Thigpen is employed by ECMC as a Bankruptcy Litigation Specialist and that she is competent to testify concerning Dr. Dewey's loans. Thigpen states that ECMC is a guarantor in the Federal Family Education Loan Program ("FFELP"), and provides specialized guarantor services to the Department of Education. Thigpen further states that Dr. Dewey obtained a number of student loans while attending the University of Tennessee Health Science Center, which are currently held by ECMC. These loans are evidenced by notes, copies of which are attached to the affidavit and may be described as follows:

Note IV, dated July 1, 1994, in the original principal amount of $8,500.00;

Note V, dated July 1, 1994, in the original principal the amount of $10,000.00;

Note VI, dated July 12, 1995, in the original principal amount of $8,500.00;

Note VII, dated July 12, 1995, in the original principal amount of $10,000.00;

Note VIII, dated August 2, 1993, in the original principal amount of $10,000.00;

Note IX, dated December 12, 1992, in the original principal amount of $4,000.00;

Note X, dated December 11, 1992, in the original principal amount of $7,500.00;

Note XI, dated December 5, 1993, in the original principal amount of $7,500.00; and

Note XII, dated March 15, 1994, in the original principal amount of $1,000.00.

Thigpen states that the amount outstanding on all notes as of May 13, 2007, was

$124,342.01, consisting of principal and interest, and that interest continues to accrue at variable rates.

Dr. Dewey's objections to the motions for summary judgment raise no factual or legal issues with respect to the amount of the loans outstanding. Sallie Mae is entitled to judgment on the three notes held by it in the amount of $31,243.50. The court is not able to calculate additional interest that may have accrued from May 1, 2007, and will delay the entry of judgment in this case to allow Sallie Mae to provide the correct amount through the date of judgment. ECMC is likewise entitled to judgment on the nine loans held by it in the amount of $124,342.01. The court is not able to calculate additional interest that may have accrued from May 17, 2007, and will delay the entry of judgment in this case to allow ECMC to provide the correct amount through the date of judgment.

Although both Sallie Mae and ECMC are entitled to judgment on their respective notes, this does not resolve the question of whether these debts may be discharged on the basis of undue hardship as claimed by Dr. Dewey. The court thus turns to a consideration of the proof provided by Dr. Dewey on each of the Brunner factors to determine whether trial is necessary or the Defendants are entitled to judgment as a matter of law. Although Dr. Dewey has not filed a cross-motion for summary judgment, if his proof is sufficient and there are no disputed questions of material fact, the court may grant summary judgment in his favor. *See, e.g., Holland v. Dole*, 591 F.Supp. 983, 985 n. 1 (M.D.Tenn.1984) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (2d Ed.1983)).

### 2. The *Brunner Factors*

#### Factor One

■ As stated previously, in order for Dr. Dewey to prevail on his claim that his student loans should be declared dischargeable, ultimately he must prove the presence of three factors. The first of these is that he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans. Dr. Dewey testified in his deposition and his answers to interrogatories that he has been unemployed since 2004. (Dep. of W.C. Dewey, October 27, 2006, pp. 50–51; Response to Interrogatory No. 4). Supplemental responses to interrogatories indicate that Dr. Dewey was employed part-time as a psychiatrist from April 9 until July 20, 2007, at the rate of $60.00 per hour. (Second Supplemental Response to Interrogatory No. 4, July 30, 2007). Schedule I filed in his case indicates that at the time of the filing of his bankruptcy case, September 23, 2005, Dr. Dewey's income consisted of $1,600 given by his relatives on a monthly basis. Schedule J indicates that he had $2,516 in monthly expenses. Dr. Dewey testified that he pays none of his own living expenses; all of his living expenses are paid by his mother. (Response to Interrogatory No. 19; Dep. of W.C. Dewey, pp. 58–59). Dr. Dewey has no dependants. (Response to Interrogatory No. 5). Dr. Dewey has not sought employment outside the medical field. (Dep. of W.C. Dewey, p. 55). Dr. Dewey has not applied for Social Security disability benefits. (Dep. of W.C. Dewey, p. 63).

■ It is difficult to evaluate the first prong of the *Brunner* test in light of the apparent willingness of Dr. Dewey's mother to pay his living expenses, whatever they are. The court is to determine whether a debtor can maintain a minimal

standard of living, based on his current income and expenses, if forced to repay his student loans. *Brunner*, 831 F.2d at 396. A debtor need not live in abject poverty to satisfy the minimal standard of living requirement, but he must demonstrate that he has taken steps to minimize his expenses and maximize his income. *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 438 (6th Cir. 1998).

Through the date of the giving of his deposition on October 26, 2007, Dr. Dewey performed all acts necessary to maintain his medical licenses in Tennessee and Georgia in a current status. (Dep. of W.C. Dewey, p. 54). The Debtor's budget includes items needed to maintain his medical license: professional privilege tax, continuing medical education, and license fees. (Voluntary Petition, doc. no. 1, Schedule J). The total budgeted amount for these items is $178 per month. Not only are these budgeted items inconsistent with Dr. Dewey's claim under the second prong of the *Brunner* test that additional circumstances exist indicating that the state of affairs that prevents him from repaying his student loans is likely to persist for a significant portion of the repayment period, but they are also inconsistent with the claim that he must make under the first prong of the *Brunner* test that he has attempted to minimize his expenses. If Dr. Dewey if not able to work as he claims, then the expenditures that he is making to maintain his medical licenses are unnecessary. These funds could be used to pay his student loans. Dr. Dewey has not taken steps to minimize his expenses.

Further, Dr. Dewey has not sought employment outside of the field of medicine and has provided no proof indicating that he would be unable to be employed outside of the field of medicine. The medical opinion that was submitted by Sallie Mae is

that of Dr. Radwan S. Haykal, who treated Dr. Dewey between August 2002 and September 2003. Dr. Haykal indicated a diagnosis of Bipolar disorder, Type I. (Dep. of Haykal, p. 10). Dr. Haykal indicated that in his then current state, Dr. Dewey could not function as a physician, but that he had not attempted to evaluate him for other employment. (Dep. of Haykal, p. 47). Dr. Haykal indicated that it was possible that Dr. Dewey could maintain some sort of employment though not practicing as a physician. (Dep. of Haykal, p. 51). Dr. Haykal declined to declare Dr. Dewey disabled from other forms of employment. (Dep. of Haykal, p. 53). Dr. Haykal did indicate that Bipolar disorder can be a disabling illness, and that patients that do not do well with treatment may end up with a disability. (Dep. of Haykal, p. 54). Given this testimony, it was incumbent upon Dr. Dewey to come forward with proof that his condition renders him unable to work in any field that would permit him to make payments toward his student loans. Dr. Dewey has not attempted to maximize his income. Although it is true that Dr. Dewey unsuccessfully attempted employment as a psychiatrist after the filing of his case, this does not change the court's evaluation of this prong. Any gainful employment would increase Dr. Dewey's income from its current level.

The court concludes that Dr. Dewey has failed to satisfy the first prong of the *Brunner* test.

**Factor Two**

Although it has been suggested that failure to satisfy the first prong of the *Brunner* test is conclusive, the court will nevertheless examine the remaining *Brunner* factors. *See Pace v. Educ. Credit Mgmt. Corp. (In re Pace)*, 288 B.R. 788 (Bankr.S.D.Ohio 2003). The second prong of the *Brunner* test requires the debtor to show that additional circumstances exist

indicating that the state of affairs that prevents him from repaying his student loans is likely to persist for a significant portion of the repayment period. The circumstance that Dr. Dewey points to is his medical condition. Dr. Haykal indicated that Bipolar disorder, Type I, can be a disabling condition. Nevertheless, Dr. Dewey has not obtained an opinion that he is disabled and continues to maintain his medical licenses in a current status. Dr. Dewey candidly admitted that he "does not want to forever give up the idea of working." (Dep. of W.C. Dewey, p. 63). He has not yet made application for Social Security disability payments. He has not sought employment outside the field of medicine. At the time of his deposition, he was taking only one medication which, by his own admission, was not intended to treat or was not effective in treating his depressive symptoms. (Dep. of W.C. Dewey, p. 70). The affidavit of Dr. Dewey's brother seems to describe depression and anxiety as the primary symptoms preventing Dr. Dewey from maintaining employment. While the court should not and will not substitute its own judgment for that of a medical doctor, in this case it is difficult for the court to conclude that even if the Debtor were unable to make payments on his student loans at this time (a state of affairs that the court has found does not exist), this state of affairs is likely to continue. Dr. Dewey is not convinced that this is so-he hopes to be employed. Further, at the time of his deposition, Dr. Dewey was not obtaining treatment that would enable him to work at some occupation, even if not medicine. Finally, no physician has rendered an opinion that Dr. Dewey is permanently disabled. It is significant to the court that Dr. Dewey has suffered from Bipolar disorder for a very long time, since he was in high school. (Dep. of W.C. Dewey, p. 8). His deposition goes into significant detail about his medical condition throughout his college and medical school careers. Notwithstanding this condition, Dr. Dewey graduated from Princeton University, successfully completed his pre-medical studies at the University of Memphis, completed medical studies at the University of Tennessee, and completed a psychiatric residency. (Dep. of W.C. Dewey, pp. 8–35). His medical condition was essentially the same at the time that he obtained his student loans as it is now. Dr. Dewey has demonstrated an ability to function at an extremely high level, beyond the expectations and abilities of most persons. Dr. Dewey's employment history indicates that he may not have the ability to sustain employment as a psychiatrist, but he has failed to demonstrate or raise as a genuine issue for trial that he cannot expect to earn income in any endeavor. That is the focus of the second prong of the *Brunner* test, not a debtor's ability to pursue his chosen line of work. *See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir.2005).

The court is not making a determination on its own that Dr. Dewey's condition is not disabling. Rather the court is pointing to the failure of Dr. Dewey to demonstrate that his condition is disabling or to at least raise a factual issue as he was required to do in response to the Defendants* motions for summary judgment. Dr. Dewey has failed to satisfy the second prong of the *Brunner* test.

### Third Factor

The third prong of the *Brunner* test requires a debtor to show that he has made good faith efforts to repay his student loans. In his deposition, Dr. Dewey indicated that he had made some payments on his student loans, but he could not recall the amount or date. (Dep. of W.C. Dewey, p. 70). Documents submitted by Dr. Dewey in support of his objec-

tion to the motions for summary judgment show that Dr. Dewey made sporadic payments on his student loans between March of 2001 and November of 2003, and one payment in May of 2004. Dr. Dewey has also presented certain forbearance agreements that he obtained between June of 2001 and May of 2004. Dr. Dewey has made no payments to Sallie Mae since May of 2004. (Aff. of Sams, ¶ 5). He has not pursued alternative repayment plans. (Dep. of W.C. Dewey, pp. 62–63). The failure to accept an alternative repayment plan is not by itself an indication of a lack of good faith. *In re Tirch,* 409 F.3d 677, 682 (6th Cir.2005). Nevertheless, the failure to seriously consider such alternatives, taken together with Dr. Dewey's failure to explore alternative employment, strongly suggests a lack of good faith. Nevertheless, the court cannot conclusively make this determination on the record presented. Dr. Dewey has at least raised a factual issue that would be appropriate for trial were it not for his failure to satisfy the first two prongs of the *Brunner* test.

## CONCLUSION

Based upon the foregoing, the court concludes that summary judgment should be entered for each of the Defendants. Dr. Dewey has failed to contest the amounts of the debts owed to each of the Defendants, and they are entitled to judgment in an amount to be shown. Dr. Dewey has further failed to make a showing sufficient to raise genuine issues for trial as to the first two prongs of the *Brunner* test necessary to demonstrate that repayment of his student loans would impose an undue hardship upon him. His failure to pursue any alternate employment together with his failure to pursue a competent declaration that his medical condition prevents him from working and is expected to continue to do so for the foreseeable future indi-

cates that his student loans may not be discharged.

The court will enter separate orders consistent with this opinion. Each Defendant is asked to file a notice of the current balance owed to it. The Plaintiff will be given ten days from the filing of each of the Defendants' notices to object to the Defendants' calculations. If an objection is filed, the court will schedule a hearing. If no objection is filed, the court will enter appropriate judgments. The time for filing notices of appeal will not begin to run until judgments are entered.