In re Kenneth Norwood CARTER and Pheobie Price Carter, Debtors.

Pheobie Price CARTER fka Pheobie Price, Plaintiff,

Kenneth Norwood Carter, Plaintiff,

v.

KENT STATE UNIVERSITY, et al., Defendants.

Bankruptcy No. 582–885.
Adv. Nos. 582–0567, 582–0568.

United States Bankruptcy Court, N.D. Ohio.

April 13, 1983.

---

Gino Battisti, Cleveland, Ohio, for Kent State University.

C. Bailey Clegg, Kent, Ohio, for debtors.

## FINDING AS TO DISCHARGEABILITY OF DEBTS

H.F. WHITE, Bankruptcy Judge.

Debtors, Kenneth Norwood Carter and Pheobie Price Carter, husband and wife, filed a joint petition for relief in accordance with Chapter 7 of Title 11 U.S.C. Kent State University was scheduled as an unsecured creditor in the amount of $10,700.00 for student loans. The debtors then filed a Complaint alleging that the debts to Kent State University were payable more than five years preceding the filing of the bankruptcy petition. The debtors also alleged that the repayment of the student loans would be an undue hardship upon them and their dependents.

Kent State University answered denying the allegations of the debtors. The case was tried by this Court, at which time the debtors admitted that the only issue to be tried was the question of whether the re-payment of the educational loans would impose an undue hardship upon the debtors and their dependents.

## FACTS

Prior to trial, the parties entered into the following stipulations of fact:

1) Pheobie Price Carter fka Pheobie Price is married to Kenneth Norwood Carter.

2) The debtors support four minor children, two children of their marriage and two children which Mrs. Carter had prior to the marriage. Mrs. Carter receives no child support for the two minor children not the issue of debtor, Kenneth Norwood Carter. Mrs. Carter and the Child Support Division of Portage County have made efforts to secure support for the children through legal channels during the last three years but to no avail.

3) Mrs. Carter owes Kent State University the sum of $8,442.76, which includes interest and penalty as of August 25, 1982. The loans were made to said debtor during the period from September 19, 1972 until and including May, 1980. The obligations were incurred prior to Mrs. Carter's marriage. It is agreed that Section 523(a)(8)(A) does not apply to this debt. There has been no payment on these debts as hardship deferments have been made (Defendant's Exhibit 1–B, page 7).

4) Mrs. Carter has a Bachelor of Science degree in Early Childhood Education and a Master's degree in Child Guidance granted in May, 1980 by Kent State University.

5) Kenneth Norwood Carter owes Kent State University the sum of $1,535.33, which includes interest and penalty as of August 25, 1982. The loans were extended during the period between July 9, 1971 and the Spring quarter, 1978. No payment has been made on these loans and deferment/postponement was granted by Kent State University (Defendant's Exhibit 1–A, pages 7, 8, 10). 11 U.S.C. Section 523(a)(8)(A) does not apply to this debt.

6) Mr. Carter was not married when his student loans were obtained. Based on the testimony at the trial and the exhibits in-

troduced, this Court also makes the following finding of facts:

7) Debtor, Kenneth Norwood Carter, was a Political Science major, but did not receive a degree from Kent State University. Having attained the status of a junior, he applied for readmission to the University but was refused due to the debts due Kent State University.

8) Debtor, Kenneth Norwood Carter, is presently employed by the Youth Development Center in Hudson, Ohio. His wages are $5.70 an hour and his net bi-weekly pay, after legal deductions, is $384.27. No degree is required for this job.

9) Mrs. Carter is employed in a program for mentally retarded adults and is presently being paid at the rate of $4.42 an hour. Her net pay after legal deductions is $235.42 bi-weekly. Her position does not require a degree.

10) Debtor, Pheobie Price Carter, has attempted but has been unable to locate a position in a school district in the field of her training. This is due in part to the fact that she has no teaching experience and she is also over-qualified because of her Master's degree in Child Guidance. Additionally, because of the low birth rate in the past several years, there has been a reduction in the number of teachers needed in the field of Early Childhood Education. The effort made by Mrs. Carter to find work suited to her educational background has been bona-fide and sincere.

11) The debtors are purchasing a house at 1339 Franklin Street, Kent, Ohio. The fair market value of said property is approximately $40,000.00. There is a mortgage on the real property to First Federal Savings and Loan Company in the amount of $32,000.00. There is also an obligation due in the amount of $9,000.00 based upon a federal grant for work to be done on the house. Said grant does provide for a forgiveness of the debt if the debtors reside in the property for a period of five years.

12) Debtor, Kenneth Carter, owns a 1980 Subaru motor vehicle with an approximate fair market value of $2,800.00. National City Bank is owed the sum of $909.36 on the vehicle. Mr. Carter uses this automobile to go to work, which is a 24-mile round-trip. Mrs. Carter is in a carpool for work.

13) Debtors are obligated to Avco Financial Service and Dial Finance on two loans secured by furniture which loans total approximately $917.00. Value of the household furniture is approximately $1,000.00.

14) Plaintiff's Exhibit "A" reflects the living expenses of the Carters. Budget expenses exceed income by $77.92 per month. The budget provides nothing for medical, dental and drug expenses, although medical expenses were scheduled in the bankruptcy petition in the amount of $193.00.

15) There are twenty-six unsecured creditors listed in the A–3 schedule with claims aggregating the sum of $18,168.20.

16) There was no evidence of unearned income or other wealth that debtors could possibly expect in the near future. The debtors and their four children are in reasonably good health.

17) Upon questioning, Kent State University admitted that its Placement Bureau could not help locate jobs more suitable or more remunerative for the Carters than the ones presently held by them.

18) At the conclusion of the Plaintiffs-Debtors' case, defendant, Kent State University, offered no evidence at the trial nor did it attempt to refute any of the claims or testimony offered by debtors.

### ISSUE

Have the debtors presented sufficient evidence to show that requiring said debtors to repay the educational loans in question would create an undue hardship upon debtors as required by 11 U.S.C. Section 523(a)(8)(B)?

### LAW

Counsel for Kent State University in his closing argument indicated that the University had no witnesses to offer nor did it have any standard as to what was undue hardship. Counsel indicated to the Court that it should look into its crystal ball to

make a determination of the parties' economic future. Unfortunately, a crystal ball is not a standard item issued by the Administrative Office in Washington, D.C. to aid the Court, nor is the Court an oracle, having never attended nor received a degree from Delphi.

However, the Court is aware of the present economic conditions and that recently there was an opening for 350 jobs in a company and 12,000 people lined up in 17 degree weather waiting hours to place their application. The Court is also aware that Ohio has the second highest unemployment rate of any state in the Union, that Youngstown, Ohio supposedly has the highest unemployment rate of any city in the United States, and that presently there are people who have graduated from college with engineering and accounting degrees who are unable to attain positions in their fields. Therefore, it does appear to this Court that a student with a Political Science major who has not graduated from college does not have a marketable skill.

It further appears that Mrs. Pheobie Price Carter has placed herself in somewhat of a Catch-22 economic position, in that, the birth rate has substantially reduced; therefore, the chance of employment in the primary school system is diminished. Additionally, the State of Ohio is contemplating cuts in aid to the school systems and various school levies in the area have recently been voted down with the result that these school systems now anticipate layoffs. Also, having obtained a Master's degree, many school systems would be unwilling to hire Mrs. Carter as a primary school teacher as they would have to pay her a higher salary than they would pay a person with a Bachelor's degree. This possibly was not explained to Mrs. Carter when she was urged by the University to enroll in Master's level Child Guidance courses. In advising her to pursue this Master's degree, the advisor might have been self-motivated, in that, he might have been concerned about his position with the University and therefore encouraged students to enroll in his courses.

Student loans are excepted from discharge under 11 U.S.C. Section 523(a)(8).[1] unless the debt became due prior to five years before the filing of the petition in bankruptcy or unless excepting the debt from discharge would impose an undue hardship on the debtor or on the debtor's dependents. In the instant case, debtors have stipulated that the provision regarding the five year limitation on non-dischargeability is not applicable.

The debtors claim that their student loan debts are dischargeable because excepting them from discharge would impose an undue hardship on them. Undue hardship is not defined by the Bankruptcy Code nor is it defined in the legislative history.[2] This Court, after considering testimony at the trial, concludes that payment of the student loan debts will impose an undue hardship on the debtors.

■ In determining whether the repayment of a student loan would create an undue hardship on a debtor, the Court must look not only to the debtor's present income but also the debtor's anticipated future income. *In Re Littell*, 6 B.R. 85, 6 B.C.D. 1049 (Bkrtcy.D.Or.1980). As set forth in *In Re Wegfehrt*, 10 B.R. 826 (Bkrtcy.N.D.Ohio 1981),

> ... the rate and amount of his (debtor's) future resources should be estimated rea-

---

1. 11 U.S.C. Section 523(a)(8) provides:

   A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
   (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—
   (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
   (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

2. H.R.Rep. No. 595, 95th Cong. 1st Sess. 132–162 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

sonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected... The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.[3]

In the instant case, an employee of Kent State University admitted in his testimony before this Court that its Placement Bureau could not obtain jobs more suitable for the Carters, both in terms of their educational backgrounds and in terms of more substantial pay. It is highly unlikely that debtor, Kenneth Norwood Carter, will ever be able to obtain a position in which he will be able to use the education he received as a Political Science major. This Court believes that a university has some obligation to see that its students receive some guidance and counselling when they choose their majors. This should include not only a determination of the student's interests, but some discussion as to the probable job market in that major following receipt of the degree.

Although Pheobie Price Carter does have a marketable skill, the market for teachers has greatly diminished in the past few years. Many qualified teachers, including individuals with actual classroom experience, something which Mrs. Carter does not have, are forced to compete with one another for the few positions which open each year. Mrs. Carter's advanced education, and her lack of classroom experience, hinder her in this competition. In light of the glutted market and the constant lay-offs in the teaching profession, it does not appear that she will soon be able to obtain a teaching position. Additionally, it appears to this Court that the longer Mrs. Carter is out of school and the longer she is unable to obtain a teaching position, the more unlikely a candidate she will make for a teaching job.

As indicated, the great majority of the debt owed to Kent State University, the sum of $8,442.76, is owed by Mrs. Carter. Mr. Carter is not liable for this debt as it was incurred prior to the couple's marriage. Were this Court to require Mrs. Carter to repay this debt and in light of the fact that she has two children who are not the issue of her present husband and for whom Mr. Carter would have no duty of support, Mrs. Carter would be put below the poverty level. Assuming that the debt were to be found to be nondischargeable and Kent State University was required to garnish Mrs. Carter's wages in order to collect the same, the maximum amount which the University could garnish, pursuant to Ohio Revised Code Section 2329.66, is the sum of $8.61 monthly or $103.32 yearly. At that rate, and not including any interest which would accrue on the debt during the period of collection, it would require eighty-one years for the University to receive payment on its debt. The factual situation presented this Court herein is far from the horror story usually cited to in the area of dischargeability of student loans where a potentially affluent doctor, lawyer or dentist manages to avoid payment on the student loan debts which enabled that individual to acquire his wealth.

The *Wegfehrt* case also states that a bankruptcy court should look to the income of the parties, allow for a minimal standard of living and then determine whether there are monies which could be paid to the university or student loan creditor in question. The budget which debtors submitted to this Court at the trial of this cause is not excessive. Despite this, the amounts which the debtors feel are necessary for a nominal standard of living are in excess of the debtors' net monthly income.

The Court finds that debtors have no present ability to make any payments on the student loan debts to Kent State University. No evidence was presented by Kent State University that debtors are like-

<hr>

3. *In Re Wegfehrt, supra* at 830, citing Commission on the Bankruptcy Laws of the United States. Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93rd Cong., 1st Sess. Part II, p. 140, n. 15 (1973).

ly to be in a more favorable financial position in the future. To require the plaintiffs-debtors to pay these student loan debts would impose an undue hardship on these debtors and the four minor children who are dependent upon them for their support.

Therefore, it is the conclusion of this Court that the repayment of the student loan debts in question to Kent State University would impose an undue hardship on debtors, Kenneth Norwood Carter and Pheobie Price Carter, and their four minor children. The student loan debts are therefore found to be dischargeable pursuant to 11 U.S.C. Section 523(a)(8)(B).