**In re Jeffrey Vincent GOODMAN and Deborah Lynn Goodman, Debtors.**

**Jeffrey Vincent Goodman and Deborah Lynn Goodman, Plaintiffs,**

v.

**US Department of Education, et al., Defendants.**

**Bankruptcy No. 10–40290.**

**Adversary No. 10–04098.**

United States Bankruptcy Court, N.D. Ohio.

May 18, 2011.

Home Mortgage—an unincorporated division of Wells Fargo Bank, N.A.

Roger R. Bauer, Warren, OH, for Plaintiffs.

James L. Bickett, Akron, OH, Steven J. Paffilas, Office of the United States Attorney, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION REGARDING COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOAN DEBTS

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on Complaint to Determine Dischargeability of Debts ("Complaint") filed by Debtors/Plaintiffs Jeffrey Vincent Goodman and Deborah Lynn Goodman on May 3, 2010. The Debtors request the Court to find that their Student Loans[1] are dischargeable pursuant to 11 U.S.C. § 523(a)(8) "because excepting such debts from discharge will impose an undue hardship on the debtors and their dependants [sic]." (Compl. ¶ 7.) On June 1, 2010, Defendant Educational Credit Management

Corporation ("ECMC") filed Answer of Defendant Intervenor Educational Credit Management Corporation (Doc. # 9). On June 8, 2010, the United States of America, on behalf of its agency, the U.S. Department of Education ("the DOE"), filed Answer of the United States of America on behalf of the U.S. Department of Education (Doc. # 13).

At the April 11, 2011 trial ("Trial"), (i) Roger R. Bauer, Esq. appeared on behalf of the Debtors; (ii) Frederick S. Coombs III, Esq. appeared on behalf of ECMC; and (iii) Steven J. Paffilas, Esq. appeared on behalf of the DOE. After hearing arguments of counsel and testimony from Jeffrey Vincent Goodman and Deborah Lynn Goodman, the Court took this matter under advisement. For the reasons set forth herein, the Court finds that the Debtors' Student Loans are not dischargeable.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (General Order No. 84) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Debtors filed a voluntary petition pursuant to chapter 7 of the Bankruptcy Code on January 29, 2010 ("Petition Date"), which was denominated Case No. 10–40290 ("Main Case"). On May 3, 2010, the Debtors commenced the instant adversary proceeding by filing the Complaint.

---

1. As defined *infra* at 4.

On June 1, 2010, ECMC filed Motion to Intervene as Party due to Transfer of Interest ("Motion to Intervene") (Doc. # 8). ECMC stated that it was the holder of a consolidated FFEL Loan executed by Ms. Goodman and originally guaranteed and held by American Student Assistance, a named defendant in this proceeding. (Mot. to Intervene at 1–2.) ECMC asked the Court to substitute ECMC as a defendant in place of American Student Assistance. (*Id.*) On June 2, 2010, the Court entered Order on Motion to Intervene as Party due to Transfer of Interest (Doc. # 10), which permitted ECMC to intervene and substituted ECMC in place of American Student Assistance as a defendant in this proceeding.

On February 24, 2011, the Debtors, ECMC and the DOE jointly filed Statement of Contested and Uncontested Facts, which has been admitted into evidence as DOE Exhibit 1.[2] The Court incorporates by reference all of the uncontested facts set forth in the Statement of Contested and Uncontested Facts, but specifically notes the following:

(1) As of February 22, 2011, Ms. Goodman was indebted to ECMC, as assignee of American Student Assistance, on a student loan in the amount of $12,354.18, bearing interest at a rate of 6.125 percent per annum (DOE Ex. 1 ¶ 3);

(2) As of January 27, 2011, Mr. Goodman was indebted to the DOE on a student loan in the amount of $73,388.69 (together with Ms. Goodman's student loan, "Student Loans") (*id.* ¶ 4);

(3) The Debtors collectively have eight children who, as of February 2011, were ages 19, 17, 17, 14, 11, 9, 1 and 1 (*id.* ¶ 7);

(4) The Debtors and their dependents constitute a family size of nine for purposes of the Poverty Guidelines established by the United States Department of Health and Human Services ("Poverty Guidelines") (*id.* ¶ 6);

(5) Neither Mr. Goodman nor Ms. Goodman presently suffers from a medical condition that prevents either of them from being gainfully employed (*id.* ¶ 8);

(6) Mr. Goodman is employed as an attorney at law and Ms. Goodman is employed at the Better Breathing Center (*id.*);

(7) On January 12, 2011, ECMC advised Ms. Goodman of her ability to enter either the Income Contingent Repayment Program ("ICRP") or the Income Based Repayment program ("IBRP") with an initial monthly payment of $0.00, subject to adjustment as family size or income changes over the next twenty-five years (*id.* ¶ 9);

(8) On February 22, 2011, the United States presented Mr. Goodman with an agreed order stating that, if Mr. Goodman complied with the requirements of the ICRP and IBRP, any balance due and owing on his student loan at the end of the twenty-five-year program term would be considered an undue hardship and discharged through his bankruptcy case (*id.* ¶ 10); and

(9) Mr. Goodman's initial monthly payment under the IBRP would be $0.00, subject to adjustment as family size or income changes over the next twenty-five years (*id.*).

---

**2.** The DOE's exhibits are labeled "Defendant's Exhibit 1" through "Defendant's Exhibit 5" and "Government Exhibit 6." For the sake of clarity, the Court will refer to these exhibits as "DOE Exhibit 1" through "DOE Exhibit 6."

On March 25, 2011, the parties jointly filed Stipulation of Parties as to Authenticity and Admissibility of Exhibits ("Stipulation") (Doc. # 41). ECMC filed Memorandum of Law of Defendant Educational Credit Management Corporation ("ECMC Brief") (Doc. # 43) on March 28, 2011, and the DOE filed Trial Brief of Defendant United States of America, on behalf of the U.S. Department of Education ("DOE Brief") (Doc. # 44) on April 7, 2011.

At the Trial, the Debtors presented the testimony of Mr. Goodman and Ms. Goodman on direct examination and re-direct. Mr. Goodman was cross-examined by Mr. Paffilas on behalf of the DOE and Mr. Coombs on behalf of ECMC. Ms. Goodman was cross-examined by Mr. Coombs. The Court admitted into evidence (i) Exhibit A[3] through Exhibit D; (ii) ECMC Exhibit 1[4] through ECMC Exhibit 5; and (iii) DOE Exhibit 1 through DOE Exhibit 6. The parties stipulated to the authenticity and admissibility of each Exhibit, except DOE Exhibit 6 (*see* Stip.), to which no party objected.

## II. LAW

Section 523(a)(8) provides that student loan debt is generally non-dischargeable in bankruptcy. Section 523(a)(8) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \*

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523 (West 2010). As a consequence, student loan debt is excepted from discharge unless the debtor can establish that the debtor and the debtor's dependents will suffer an undue hardship if the student loan debt is not discharged.

The Bankruptcy Code does not define undue hardship, but the Sixth Circuit Court of Appeals has adopted the test set forth by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir.1987) (per curiam), to determine if an undue hardship exists. *See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 385 (6th Cir.2005). Pursuant to the *Brunner* test, the debtor must prove each of the following three elements by a preponderance of the evidence:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment pe-

---

**3.** The Debtors' exhibits are labeled "Plaintiff's [sic] Exhibit A" through "Plaintiff's [sic] Exhibit D." For the sake of clarity, the Court will refer to these exhibits as "Exhibit A" through "Exhibit D."

**4.** ECMC's exhibits are labeled "ECMC # 1" through "ECMC # 5." The court will refer to these exhibits as "ECMC Exhibit 1" through "ECMC Exhibit 5."

riod of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 359 (6th Cir.2007) (quoting *Oyler*, 397 F.3d at 385).

### III. ANALYSIS

#### A. Minimal Standard of Living.

 The first element of the *Brunner* test requires the Debtors to establish that they cannot presently maintain a minimal standard of living for themselves and their dependents if forced to repay the Student Loans. *Id.* "The essence of the minimal standard of living requirement is that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of their [sic] student loan creditor(s)." *Mitcham v. U.S. Dep't of Educ. (In re Mitcham)*, 293 B.R. 138, 144 (Bankr.N.D.Ohio 2003) (citing *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir.1996)). " '[A] court should not expect a debtor to live in abject poverty. On the other hand, the minimal standard of living requirement of the Brunner Test may require that a debtor make some major sacrifices, both personal and financial, with respect to their [sic] current style of living.' " *Id.* at 145 (quoting *Flores v. U.S. Dep't of Educ. (In re Flores)*, 282 B.R. 847, 854 (Bankr. N.D.Ohio 2002)). A court is not required to accept the debtor's scheduled income and expenses at face value but, instead, " 'is under a duty to scrutinize, and in appropriate circumstances adjust, a debtor's income and expenses so as to ensure that such income and expenses reflect a true picture of the debtor's financial situation.' " *Id.* at 144–45 (quoting *Flores*, 282 B.R. at 854).

 The Debtors' average monthly net income is $3,719.23 and their average monthly expenses are $4,016.70. (*See* Ex. D.) Thus, the Debtors' average monthly expenses exceed their average monthly net income by nearly $300.00. In support of the Debtors' estimated monthly expenses, Mr. Goodman testified to the following. Five of the Debtors' children reside with the Debtors, including twins who are one year old. Mr. Goodman has two other minor children who, although they do not reside with the Debtors, spend time at the Debtors' residence.

The household expenses set forth in Exhibit D—*i.e.*, Amended Schedule J filed on March 23, 2011 (Main Case, Doc. # 26)— include food expenses in the amount of $1,000.00 and clothing expenses in the amount of $150.00. Mr. Goodman stated that the Debtors' food expenses include diapers and formula for the one-year-old twins. The Debtors' mortgage, which has a monthly payment of $575.34, is currently in arrears. Despite allocating approximately $100.00 per month for home maintenance, Mr. Goodman testified that the Debtors have not been able to adequately maintain their home, which, among other things, has a leaking roof.

Mr. Goodman further testified that neither he nor Ms. Goodman has a pension or 401(k) plan and the Debtors do not have any savings. The Debtors incur average monthly medical and dental expenses in the amount of $50.00; neither Mr. Goodman nor Ms. Goodman has medical insurance, although the children are provided a "medical card" through "OEHS." (Trial Tr. at 10:32:09.) In addition, Mr. Goodman stated that he has skin cancer that is not currently being treated because the Debtors cannot afford the treatment.

The Debtors' average monthly expenses, as set forth in Exhibit D, do not appear to be inflated and, in fact, may be understated. For a household that contains between seven and nine people, monthly ex-

penses of $1000.00 for food and $150.00 for clothing are minimal. Furthermore, expenses that could be considered discretionary—*e.g.*, $50.00 for recreation and $135.00 for cable, internet and phone—are reasonable. Even if the Debtors were able to reduce their current expenses (which do not include payments for the Student Loans) to equal their income, the Debtors would still be unable to pay their mortgage arrearage, repair their residence or obtain medical insurance for themselves. The parties stipulated that the Debtors and their dependents constitute a family size of nine for purposes of the Poverty Guidelines. (DOE Ex. 1 ¶ 6.) For 2011, the poverty level for a household of nine is an annual income of $41,450.00. *Annual Update of the HHS Poverty Guidelines*, 76 Fed. Reg. 13, 3637–38 (January 20, 2011). The Debtors' combined gross monthly income was $3,718.00 as of January 29, 2010, which constitutes $44,616.00 per year. (ECMC Ex. 3 at 26.) The DOE represented that Mr. Goodman's answers to the DOE's interrogatories revealed the Debtors' combined gross monthly income is $3,815.00. (DOE Brief at 4.) Mr. Goodman testified that the Debtors' income will only marginally increase in 2011 (if it increases at all). Accordingly, this Court finds that the Debtors' annual gross income for 2011 likely will exceed the poverty line by approximately $4,000.00.[5] As stated in *Mitcham v. U.S. Dep't of Educ. (In re Mitcham)*, 293 B.R. 138, 145 (Bankr.N.D.Ohio 2003), the *Brunner* test does not require the Debtors to live in poverty to satisfy the minimal standard of living element.

For the reasons set forth above, the Court finds that the Debtors cannot maintain, based upon current income and expenses, a minimal standard of living for themselves and their dependents if forced to repay the Student Loans.[6] As a consequence, the Debtors have satisfied the first element of the *Brunner* test.

## B. Likely State of Affairs During Repayment Period.

 Pursuant to the second element of the *Brunner* test, the Debtors must establish additional circumstances indicating that the Debtors and their dependents will be unable to maintain a minimal standard of living for a significant portion of the repayment period if forced to repay the Student Loans. *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 359 (6th Cir.2007). The Debtors "must show that circumstances indicate a 'certainty of hopelessness, not merely a present inability to fulfill financial commitment.'" *Id.* (quoting *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir.2005)). Such circumstances may include "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Oyler*, 397 F.3d at 386 (citing *Kraft v. New York State Higher Educ. Servs. Corp. (In re Kraft)*, 161 B.R. 82, 84 (Bankr.W.D.N.Y.1993)). "[M]ost importantly, [the circumstances] must be beyond the debtor's control, not borne of free choice." *Id.* (citing *Fischer v. State Univ. of New York (In re Fischer)*, 23 B.R. 432, 434 (Bankr.W.D.Ky.1982)).

---

**5.** The only evidence presented regarding the Debtors' projected 2011 income was Mr. Goodman's testimony that it will approximate the Debtors' 2010 income. By way of comparison, the poverty level for a household of nine in 2010 was $40,750.00—$700.00 less than the corresponding 2011 poverty level. *Delayed Update of the HHS Poverty Guidelines*

*for the Remainder of 2010*, 75 Fed. Reg. 148, 45628–29 (Aug. 3, 2010).

**6.** The Court notes that neither the DOE nor ECMC expressly argued in its Brief or at the Trial that the Debtors did not satisfy the first element of the *Brunner* test.

The Debtors' current inability to maintain a minimal standard of living is based primarily on their family size. As a consequence, it is appropriate to determine if the Debtors will be required to provide for their seven dependent children for an extended period of time. Although the Debtors' children will always be their children, the children will not always be dependents of the Debtors. It is a common occurrence that children grow up and become independent.

Five of the Debtors' children currently reside with the Debtors, including the year-old twins. Furthermore, Mr. Goodman pays support in the amount of $558.09 per month for his children who do not live at the Debtors' residence. (Ex. D.) Mr. Goodman testified that he pays approximately $106.00 per month in support for his seventeen-year-old son and approximately $216.00 per month to support his fourteen-year-old daughter. Mr. Goodman also pays approximately $216.00 per month toward a support arrearage of roughly $10,000.00.[7] (*See* DOE Ex. 6.) On the other hand, Ms. Goodman receives $400.00 per month in support for her seventeen-year-old daughter. (*See* ECMC Ex. 3 at 26.)

Within one year, two of the Debtors' children will reach the age of majority and become emancipated.[8] At that time, they will no longer qualify as the Debtors' dependents and cannot be factored into an undue hardship analysis under § 523(a)(8). Furthermore, all of the Debtors' children,

except the one-year-old twins, will reach the age of majority within the next nine years. (*See* DOE Ex. 1 ¶ 7.) These facts contradict the Debtors' contention that their current state of affairs is likely to persist for a substantial portion of the repayment period of the Student Loans.

Ms. Goodman's mother currently cares for the twins while Ms. Goodman is at work. Ms. Goodman testified that she is able to work only ten to fifteen hours per week because of her mother's limited availability to watch the children and the prohibitive cost of other daycare. Although Ms. Goodman has sought other employment opportunities, she testified that any increase in working hours would be outweighed by a corollary increase in daycare costs. However, the Debtors' one-year-old twins will presumably start school at age five or six. At that time, Ms. Goodman could work more hours without incurring additional daycare expenses. Furthermore, it may no longer be cost prohibitive for Ms. Goodman to work full time once the twins are in school.

The evidence also indicates that the Debtors' income has, in fact, increased since the Petition Date and that nothing precludes the Debtors' income from continuing to increase in the future. The Debtors' combined average monthly net income was $3,320.00 on the Petition Date. (ECMC Ex. 3 at 26.) Approximately fourteen months later, the Debtors' average monthly net income had increased to $3,719.23. (Ex. D.) Furthermore, "[n]ei-

---

7. DOE Exhibit 6 states that Mr. Goodman's oldest daughter became emancipated effective June 30, 2010, and establishes a support arrearage in the amount of $10,339.58, as of March 31, 2010. The Exhibit fails to state for which of Mr. Goodman's children the support arrearage exists. (*See* DOE Ex. 6.) No other evidence was presented regarding the nature of the support arrearage.

8. Because the approximately $106.00 per month support obligation paid by Mr. Goodman and the approximately $400.00 per month support received by Ms. Goodman will presumably cease when the children reach the age of majority, the Debtors will experience nearly a $300.00 net decrease in support per month when the two seventeen-year-old children become emancipated.

ther Debtor presently suffers from a medical condition that prevents either from being gainfully employed." (DOE Ex. 1 ¶ 8.)

For the reasons stated above, the Court finds that the Debtors have not demonstrated, by a preponderance of the evidence, that their inability to maintain a minimal standard of living is likely to persist for a significant portion of the Student Loans' repayment period. As the Debtors' children become emancipated, the Debtors' household expenses should decrease. Although Ms. Goodman will cease to receive support for her seventeen-year-old daughter, this loss of support will be offset by the daughter's emancipation and the eventual termination of Mr. Goodman's support obligations. Furthermore, once the twins are enrolled in school, Ms. Goodman will presumably be able to work more hours without incurring costly daycare expenses. Finally, the Debtors' income has increased significantly since the Petition Date, supporting the Court's finding that the Debtors' current state of affairs is not likely to continue for a significant portion of the Student Loans' repayment period.

### C. Good Faith Efforts to Repay the Student Loans.

▮▮▮▮ Finally, the Court must consider whether the Debtors made good faith efforts to repay the Student Loans. *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 359 (6th Cir.2007). "[A] primary consideration for the third prong of the Brunner test is axiomatic: the extent to which any voluntary payments were made toward the student-loan obligation." *Roberts v. U.S. Dep't of Educ. (In re Roberts)*, 442 B.R. 116, 120 (Bankr. N.D.Ohio 2010) (citing *Cekic–Torres v. Access Group, Inc. (In re Cekic–Torres)*, 431 B.R. 785, 794 (Bankr.N.D.Ohio 2010)). Because good faith is a fact-specific analysis, "whether a debtor has made payments

on a student-loan obligation will not always be dispositive." *Id.* (citing *Grant v. U.S. Dep't of Educ. (In re Grant)*, 398 B.R. 205, 212 (Bankr.N.D.Ohio 2008)). The Debtors' decisions not to participate in the ICRP or IBRP are not *per se* indications of a lack of good faith, but are probative of the Debtors' intent to repay the Student Loans. *Tirch v. Pennsylvania Higher Educ. Assis. Agency (In re Tirch)*, 409 F.3d 677, 682 (6th Cir.2005) (internal citations omitted) (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 397 (2d Cir.1987)).

In *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353 (6th Cir. 2007), the Sixth Circuit Court of Appeals explained that failure to enroll in the ICRP is not a *per se* indication of a lack of good faith because, "[h]ad Congress intended participation in the ICRP—implemented in 1994—to effectively repeal discharge under § 523(a)(8), it could have done so [when it enacted BAPCPA]." *Id.* at 364. The Court of Appeals explained that enrollment in the ICRP has potential negative consequences: "The debtor is encumbered with the debt for an additional twenty-five years, regardless of the length of the student loans. If, at the end of the twenty-five years, the debtor has been unable to repay all the student loans, the remaining debt is canceled and . . . treated as taxable income." *Id.* After finding that the debtor had established a present and future inability to pay his student loan debt, the Court of Appeals concluded that the debtor's decision to forgo the ICRP was not indicative of bad faith due, in part, to the "significant tax consequences." *Id.*

▮▮▮ The instant proceeding is distinguishable from *Barrett* in two critical respects: (i) Mr. Goodman would not realize taxable income upon completion of the ICRP or IBRP, and (ii) the Debtors have not demonstrated a future inability to re-

pay their Student Loans. The United States presented Mr. Goodman with an agreed order providing that, if Mr. Goodman complied with the requirements of the ICRP or IBRP, "any balance due and owing on said loan at the end of the 25 year program shall be considered an undue hardship and discharged through this bankruptcy proceeding." (DOE Ex. 1 ¶ 10.) Accordingly, Mr. Goodman would not realize any taxable income as a result of successfully completing the ICRP or IBRP. Mr. Goodman's current monthly payment under the IBRP would be $0.00.[9] (*Id.*) Although Mr. Goodman testified that he has made approximately $34,000.00 in student loan payments since 1992, the Court finds that his refusal to enroll in the IBRP (under which his current monthly payment would be $0.00 and any outstanding student loan debt would be discharged upon completion of the program) demonstrates a lack of good faith by Mr. Goodman to repay his student loan. This finding is further supported by the Court's conclusion that Mr. Goodman has not demonstrated that his current inability to pay his student loan is likely to persist into the future. (*See supra* at 11–15.)

Ms. Goodman also declined to enter either the ICRP or IBRP, although under either program her initial monthly payment would be $0.00. Ms. Goodman testified that she owed approximately $10,000.00 in student loan debt when she graduated from Youngstown State University in 1996. Ms. Goodman stated that she made payments toward her student loan debt for approximately one year following graduation, but has not made any subsequent payments. As a result of not having made any student loan payments in nearly fifteen years, Ms. Goodman's student loan obligation to ECMC, as of February 22, 2011, was $12,354.18. (DOE Ex. 1 ¶ 3.) Ms. Goodman's failure to make a single payment toward her student loan debt for approximately fifteen years, coupled with the fact that she made payments for only one year, is probative of bad faith. In addition, the Court concluded that it is not likely Ms. Goodman will continue to be unable to repay her student loan for a substantial portion of the repayment period. (*See supra* at 11–15.) As a consequence, the Court finds that Ms. Goodman has not made good faith efforts to repay her student loan.[10]

The Court finds that the Debtors have not, by a preponderance of the evidence, established that they made good faith efforts to repay the Student Loans. As a consequence, the Debtors have not satisfied the third element of the *Brunner* test.

## IV. CONCLUSION

Based on the Debtors' current expenses (which the Court finds to be reasonable) and current income, the Debtors cannot maintain a minimal standard of living for themselves and their dependents if forced to repay the Student Loans. However, five of the Debtors' seven dependent children will reach the age of majority in the next nine years, including two children who will reach the age of majority within one year. The Debtors' income has increased since the Petition Date. As a result, the Debtors' current state of affairs is not likely to persist for a significant portion of the Student Loans' repayment period. Finally, neither of the Debtors

---

**9.** Mr. Goodman testified on cross-examination that the DOE agreed to waive the requirement that he successfully complete three monthly payments under the ICRP prior to becoming eligible for the IBRP.

**10.** Ms. Goodman offered no evidence of any adverse tax consequences, if any, at the end of the repayment period.

has established, by a preponderance of the evidence, that he or she made good faith efforts to repay his or her Student Loan because, *inter alia*, (i) Ms. Goodman made payments toward her student loan debt for only one year since graduating in 1996; (ii) both Debtors refused to enroll in the ICRP or IBRP; and (iii) the United States offered to discharge any unpaid amount of Mr. Goodman's student loan following completion of the ICRP or IBRP and, thus, waive any tax consequences.

For the reasons set forth above, the Court finds that the Debtors have not satisfied all three elements of the *Brunner* test by a preponderance of the evidence. As a consequence, the Debtors are not entitled to a discharge of the Student Loans pursuant to 11 U.S.C. § 523(a)(8).

An appropriate order will follow.

## ORDER HOLDING STUDENT LOAN DEBTS ARE NOT DISCHARGED

This cause is before the Court on Complaint to Determine Dischargeability of Debts filed by Debtors/Plaintiffs Jeffrey Vincent Goodman and Deborah Lynn Goodman on May 3, 2010. On June 1, 2010, Defendant Educational Credit Management Corporation ("ECMC") filed Answer of Defendant Intervenor Educational Credit Management Corporation (Doc. # 9). On June 8, 2010, United States of America, on behalf of its agency, the U.S. Department of Education ("the DOE"), filed Answer of the United States of America on behalf of the U.S. Department of Education.

At the April 11, 2011 trial, (i) Roger R. Bauer, Esq. appeared on behalf of the Debtors; (ii) Frederick S. Coombs III, Esq. appeared on behalf of ECMC; and (iii) Steven J. Paffilas, Esq. appeared on behalf of the DOE. The Court heard arguments of counsel and testimony from Jeffrey Vincent Goodman and Deborah Lynn Goodman.

For the reasons set forth in this Court's Memorandum Opinion Regarding Complaint to Determine Dischargeability of Student Loan Debts entered on this date, the Court finds:

(1) The Debtors cannot maintain, based on current income and expenses, a minimal standard of living for themselves and their dependents if forced to repay the Student Loans;

(2) The Debtors did not establish, by a preponderance of the evidence, additional circumstances indicating that they will be unable to maintain a minimal standard of living for a significant portion of the repayment period if forced to repay the Student Loans; and

(3) The Debtors did not establish, by a preponderance of the evidence, that the Debtors made good faith efforts to repay the Student Loans.

As a consequence, the Court hereby finds and holds that the Debtors' Student Loans are not dischargeable pursuant to 11 U.S.C. § 523(a)(8); provided, however, this determination is specifically conditioned on the offers of ECMC and the DOE regarding enrollment/participation in the specified repayment programs (including the DOE's offer to discharge any unpaid balance of Mr. Goodman's debt at the end of the repayment period) remaining open and available for the Debtors to accept.

**IT IS SO ORDERED.**